ADDINGTON v. HOWARD et ux.

(Court of Civil Appeals of Texas. Galveston. Jan. 6, 1912.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENT.

Under Courts of Civil Appeals Rule 31 (67 S. W. xvi), assignments of error not supported by a sufficient statement will not be considered on appeal, and, where statements under assignments of error in rulings on evidence refer to no objection to the evidence, except to state in a few instances that the evidence was admitted over the objection of the plaintiff, and it does not appear even by inference therein that any exception was taken, the statements are insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. TRESPASS TO TRY TITLE (§ 41*)—EVIDENCE.

In an action of trespass to try title, evidence *held* to show that the predecessors in interest of the plaintiff recognized the claim and right of the defendant to land in controversy and to justify the conclusion that they and their successors are forever bound and estopped from asserting title to the tract.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

3. PUBLIC LANDS (§ 178*)—LAND CERTIFICATE—AGREEMENT AS TO LOCATION.

Where a person agreed with the owner of a public land certificate to locate and survey the land under the certificate for a third interest therein, and in pursuance to such agreement the survey was made, and the owner permitted such person to take and sell a certain portion of the land as his locative interest, and the settlement and division was acquiesced in by the owner and his heirs, the owner and his heirs are devested of any interest in the land taken by the locator.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 579–582; Dec. Dig. § 178.*]

Appeal from District Court, Anderson County; B. H. Gardner, Judge.

Trespass to try title by O. J. Addington against S. Howard and wife. From a judgment for defendants, plaintiff appeals. Affirmed.

Gregg & Brown, for appellant. Campbell, Sewell & Strickland, for appellees.

REESE, J. This is an action in trespass to try title to a tract of 25 acres of land, owned by O. J. Addington, against S. Howard and wife. The land is a part of the Peter Hinds survey of 557 acres. A trial without a jury resulted in a judgment for defendants, from which the plaintiff appeals.

The court, at the request of counsel for plaintiff, prepared and filed conclusions of fact and law which are incorporated in the record. None of the conclusions of fact of the trial court are challenged by the assignments of error, and they are hereby adopted by us as our conclusions:

"Findings of Fact.

"First. I find: That a certificate was issued by the board of land commissioners of Jasper county, Tex., to Peter Hinds on the 16th day of July, 1840, for 1,280 acres of land, being certificate No. 281, second class, and that said certificate was transferred by said Peter Hinds to Wm. A. Brimbury.

"Second. That said Wm. A. Brimbury entered into a contract with John Smith to have the land located and surveyed for him under said certificate, and agreed to give him a one-third interest therein for his services in having the land located and surveyed for him.

"Third. That subsequently said 1,280 acres of land was located and surveyed in Anderson county, Tex., under said certificate, in two separate tracts or surveys; one containing 723 acres of land, and the other 557 acres. That on April 8, 1853, said 557 acres was surveyed by the county surveyor of Anderson county for John Smith, as assignee. That on July 27, 1870, a patent was issued to the same by the state of Texas to Wm. A. Brimbury, as assignee of Peter Hinds, and that the tract of land involved in this suit is a part of said 557-acre survey.

"Fourth. That on May 22, 1858, by a deed of said date, said John Smith sold and conveyed said entire 557-acre survey to A. Q. Nix, and that neither the said Wm. A. Brimbury during his lifetime, nor his heirs since his death, have ever asserted any claim to it, although they have known of said sale for many years. I further find that said Wm. A. Brimbury asserted claim to said 723-acre tract during his lifetime, and that since his death, which occurred about July 12, 1894, his heirs have asserted claim to and sold and conveyed by deeds all of said 723-acre tract or survey. And from these and all of the other facts and circumstances in evidence, I conclude as a matter of fact: That there was an understanding and agreement by and between said Wm. A. Brimbury and said John Smith that said John Smith was to take and have, and did take and have, said 557-acre survey as his locative interest in said land, and that said Wm. A. Brimbury was to take and have, and did take and have, said 723-acre survey as his part; and that for more than 50 years both of said parties, and the heirs of said Wm. A. Brimbury, deceased, have recognized and acquiesced in said settlement and division.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

"Fifth. That at the time of the death of said Wm. A. Brimbury he left surviving him as his only heirs his wife, Harriett Brimbury, his son, Wm. H. Brimbury, and his daughter, Mrs. Annie Simpson, and that he left a written will which was duly probated in Cook county, Tex., on October 11, 1894. That said Harriett Brimbury died about June 13, 1895, and that by the terms of said will of said Wm. A. Brimbury, at the death of his said wife, all of his property passed to and vested in his said son, Wm. H. Brimbury.

"Sixth. That since the institution of this suit, to wit, on February 18, 1909, said Wm. H. Brimbury, for a recited consideration of $5, executed to said plaintiff, O. J. Addington, a quitclaim deed to all of his right, title, and interest in a certain part of said 557-acre survey, the field notes of which embrace the tract of land involved in this suit.

"Seventh. I further find that prior to the execution of said deed from said Wm. H. Brimbury to said O. J. Addington, above mentioned, said plaintiff and said defendants both claimed title to the land involved in this suit through W. H. King, as the common source. And I further find: That said 557 acres of land was conveyed to said W. H. King by a deed executed to him by A. Q. Nix, Jr., on June 7, 1870, which was recorded in volume N, page 348, of said Deed Records of said Anderson county, Tex., on the same day it was executed.

"Eighth. That on October 17, 1870, said W. H. King, by a deed of said date conveyed to Elizabeth Petty, by proper field notes, two separate tracts of land off of said 557 acres, one of said tracts containing 100 acres, and the other 25 acres. That said 100-acre tract was situated in the extreme south portion of said 557-acre survey, and that said 25-acre tract was situated several hundred varas north and to the east of the north line of said 100 acres. Said deed was recorded in volume O, page 16, of said Deed Records, on October 17, 1870.

"Ninth. That on the 2d day of January, 1882, by a deed of said date, R. B. Petty conveyed to Sam Price the same 125 acres of land that W. H. King had conveyed to Elizabeth Petty, describing it the same way, and that said deed was recorded in volume 30, page 622, of said Deed Records, on January 2, 1882. I further find that said R. B. Petty was a son of said Elizabeth Petty and attended to her business for her; that after the execution of said deed she died; that at the time of her death she left as her only surviving heirs, three sons, viz., said R. B. Petty, John Petty, and Wm. Petty; that at the time of her death the purchase money for said land had not been paid; but that after her death each one of her said three sons received and accepted from said Sam Price their portion of said purchase money for said land, and ratified and acquiesced in said sale and conveyance. I further find: That the map or plat hereto attached, and marked 'Exhibit A,' shows the lines of said 557-acre survey, the length of some of said lines, the location of said 100-acre tract and said 25-acre tract conveyed by said R. B. Petty to Sam Price; also, the 231.76-acre tract hereinafter mentioned, and the location, in the dotted lines, of the 25-acre tract involved in this suit.

S. G. WELLS LEAGUE — EXHIBIT A.

"Tenth. That on November 11, 1887, Sam Price executed to S. Howard, one of the defendants in this suit, a bond for title to 37½ acres of said land, and that said 37½ acres embraces all of the land involved in this suit, and also a small portion off of the north end of said 100-acre tract conveyed to said Sam Price; and that said bond for title was recorded in volume ———, page ———, of said Deed Records, on December 16, 1890. I further find that said S. Howard paid for said land according to the terms of said bond, and that on December 2, 1895, said Sam Price and his wife executed to him a deed to said land, which was recorded in volume 54, page 191, of said Deed Records, on the 13th day of December, 1895. I further find: That about January or February in 1902 or 1903, said Howard fenced said land. That in 1903 or 1904 he had a portion of it in cultivation and raised a crop on it, and he has cultivated and raised crops on it each and every year since, and he has paid the taxes on said land almost every year since he received said bond for title to same.

"Eleventh. That when said Sam Price purchased said 125 acres of land from said R.

B. Petty in 1882, he believed that it was all in one body and embraced all of the land shown on said· map lying south of the north line of the tract involved in this suit, and that he has never claimed the 25 acres deeded to him by said R. B. Petty which lies north of said line. I further find that, when he purchased said land from said Petty, there was then a well-marked line running from east to west, and which is the north line of the tract of land involved in this suit, and which said Sam Price claimed was the north line of his 125 acres. I find that he cut wood up to said line on the south side thereof, and at one time had a fence along said line; that the owners of the land lying immediately north of it also recognized it as the division line between their land and said 125 acres belonging to said Sam Price; and that they had wood cut up to it on the north side thereof. I further find that, when said Sam Price executed said bond for title to said S. Howard for said 37½ acres of. land in 1887, he had it surveyed off by a man by the name of Hanks, who found and followed the said north line of said tract in controversy, already referred to. I further find: That said Sam Price and said S. Howard then believed that said line was the true north boundary line of Sam Price's 125 acres, and that neither one of them ever found out otherwise until about the year 1899, when Sam Price was informed of the mistake.

"Twelfth. That W. H. King and wife executed to J. M. Silliman a deed to said 557-acre survey on June 28, 1871, which was recorded in volume P, page 366, of said Deed Records, of the same day. That on October 14, 1876, said J. M. Silliman deeded said 557-acre tract to W. M. Harrison, which was recorded in volume T, page 292, of said Deed Records, on November 18, 1876. That on April 10, 1883, said W. M. Harrison deeded said 557 acres of land to John C. Harrison, which was recorded in volume 30, page 607, of said Deed Records, on April 12, 1883. That on November 20, 1885, said John C. Harrison deeded said 557 acres of land to G. W. Gillespie, which was recorded in volume 37, page 623, of said Deed Records, on June 16, 1886. That on September 14, 1889, said G. W. Gillespie executed to M. A. Spoonts, as trustee, for the benefit of Standley & Spoonts and R. J. Boyken, a deed of trust on said 557 acres of land, which was recorded in the deed of trust records of said Anderson county in volume 4, page 282, on September 16, 1889. That on December 3, 1889, said G. W. Gillespie, by G. W. Gilbert, as substitute trustee under said deed of trust, deeded said 557 acres of land to D. A. Akin, which was recorded in volume 42, page 521, of said Deed Records, on December 7, 1889. That on December 4, 1889, said D. A. Akin deeded to G. W. Gilbert an undivided one-half· interest in said land, less 125 acres sold to Sam Price and 50 acres to another

party out of the north part of said survey, which deed was recorded in volume 42, page 551, of said Deed Records, on December 11, 1889. That on January 4, 1892, said D. A. Akin and Mary A. E. Gilbert deeded to H. L. and Carter Price the 231.76 acres out of said 557-acre survey, as shown upon said map, which deed was recorded in volume 57, page 262, on November 1, 1897. Said deed described said 231.76 acres of land by field notes, and the south line of same ran along the north line of the land involved in this suit and embraced and conveyed said 25-acre tract north of said line that was deeded by said R. B. Petty to Sam ·Price in 1882. That on October 30, 1897, Sam, H. L., and C. L. Price deeded said 231.76 acres of land to E. P. McDonald, which was recorded in volume 57, page 257, of said Deed ·Records, on November 1, 1897. On October 30, 1897, said E. P. McDonald deeded said 231.76-acre tract to H. L. Price, which was recorded in volume 57, page 258, of said Deed Records, on November 1, 1897. On November 4, 1899, said H. L. Price deeded all of said 231.76-acre tract to the plaintiff, O. J. Addington, save and except said 25-acre tract that was deeded to Sam Price by said R. B. Petty in 1882, which was recorded in volume 63, page 544, of said Deed Records, on October 8, 1901. And said H. L. Price appears to be the present owner of said 25 acres, and said O. J. Addington is the present owner of the balance of said 231.76 acres.

"Thirteenth. I further find that neither the said D. A. Akin nor the said Mary A. E. Gilbert, or any person claiming through or under them, save and except said plaintiff, O. J. Addington, as hereinafter stated, have ever asserted any claim to the land involved in this suit, nor to any land on said survey south of the north line of said 25 acres so involved herein since they conveyed said 231.76-acre tract to said H. L. and Carter Price on January 4, 1892, as aforesaid, nor at any time prior to said date. * * *

"Fifteenth. I find that said plaintiff, O. J. Addington, claims title to the strip of land involved in this suit, in the following manner, to wit:

"(1) Through a quitclaim deed executed to him by Mary A. E. Gilbert on October 10, 1900, to all of her right, title, and interest in said 557-acre survey.

"(2) Through a judgment rendered in the district court of said Anderson county, Tex., on January 30, 1897, in favor of Chas. E. Brown against Tenanna Miller et al., for all of the residue of the estate of D. A. Akin, deceased, not recovered by Mrs. Anna E. Akin, which property recovered by said Mrs. Anna E. Akin did not include any part of said 557-acre survey, and no part of said 557-acre survey was mentioned in said judgment in favor of said Chas. E. Brown.

"(3) A judgment rendered in the district court of Anderson county, Tex., on January 30, 1897, in favor of Mrs. Anna E. Akin in

the suit styled 'E. P. McDonald et al. v. Mrs. Anna E. Akin et al.'

"(4) A deed executed by said Chas. E. Brown to said O. J. Addington on September 27, 1899, recorded in volume 68, page 584, of said Deed Records, on October 8, 1901, which does not specifically mention any of said 557-acre survey."

From these conclusions of fact the trial court deduced the following conclusions of law:

"First. That after D. A. Akin and Mary A. E. Gilbert sold and conveyed Sam Price's 25 acres of land situated above the north line of the tract of land involved in this suit to H. L. and Carter Price, they then and thereby recognized the claim and right of the defendant S. Howard, who claimed under Sam Price, to the 25 acres they owned south of said line—the land in controversy—and they and all persons claiming through and under them afterwards, including the plaintiff, were and are forever barred and estopped from asserting title to any part of the tract of land involved in this suit.

"Second. That Wm. A. Brimbury having agreed with or permitted John Smith to take and sell said 557-acre survey as his locative interest in said 1,280 acres of land, and the said Wm. A. Brimbury having taken said 723-acre survey as his part, and such settlement and division having been acquiesced in by his heirs, the heirs of said Wm. A. Brimbury had no right to any part of said 557-acre survey; and therefore the deed from Wm. H. Brimbury, son and heir of said Wm. A. Brimbury, deceased, to the plaintiff, O. J. Addington, conveyed no title to the land therein described."

Upon which conclusions of fact and law judgment was rendered for appellees.

[1] The first 16 assignments of error are addressed to certain alleged errors of the trial court in the admission of evidence over the objection of appellant. None of these assignments is prepared with any regard to rule 31 (67 S. W. xvi) of the rules regulating preparation of briefs. In the first place, the brief, as to these assignments, is throughout absolutely silent as to the several objections to the evidence. No reference is made to any objection, except the bare statement that the evidence was admitted over the objection of the plaintiff. No reference is made in any of the so-called statements under the assignments and propositions thereunder to any bill of exceptions, nor does it appear even by inference that any exception was taken to the admission of the evidence. The statements are otherwise wholly insufficient. For instance, the first assignment of error complains of the ruling of the court in admitting in evidence, over objection of plaintiff, the recital, "a survey of 557 acres of land made for John Smith, assignee of," contained in field notes as recorded in the surveyor's records of Anderson county. Fol-

lowing the proposition is the following: "Statement. A survey of 557 acres of land for John Smith, assignee. (S. F. p. 44.)" The statement under the second, third, fourth, and fifth assignments, which complain of the admission of the same recital in certain deeds, is as follows: "See deeds mentioned in assignment of errors." This and nothing more. The statements under the other assignments are of like character. We have no information as to what objection was made to the evidence, and we cannot assume, when the brief is silent as to that fact, that any exception was taken to its admission. The index to the transcript shows that only six bills of exceptions were taken, and from that we gather that as to at least ten of these assignments of error in the admission of evidence no exception was taken, without which the ruling of the court cannot be reviewed. It is not necessary to do more than to refer to rule 31, the requirements of which are plain and positive. They have been discussed so often by our Courts of Civil Appeals that no citation of authority is deemed necessary. We can only repeat what was said by this court in passing upon a similar question in Jackson v. Tonahill et al., 49 Tex. Civ. App. 169, 108 S. W. 180: "This statement is insufficient to require a consideration of the assignment, in that it fails to show what objection was made to the introduction of the evidence, or what ruling was made by the court upon such objection, and does not refer to any bill of exceptions or any page of the record from which this court can ascertain what objection was made to the evidence, or what ruling was made by the trial court. It is well settled that an assignment not supported by a sufficient statement should not be considered by an appellate court, and it is clear that the statement in question is insufficient under the rules prescribing the manner in which cases should be presented on appeal." Colorado Canal Co. v. McFarland, 50 Tex. Civ. App. 92, 109 S. W. 437.

It is hardly a matter of discretion in this court to consider, or refuse to consider, these assignments. Cases in this court must be heard and determined upon errors either assigned or apparent of record, and an error not presented in the brief in substantial compliance with the requirements of the rules cannot properly be considered. For the reasons stated, none of the assignments referred to can be considered.

[2] By his twenty-fourth assignment of error appellant complains of the conclusion of the trial court "that after D. A. Akin and Mary A. E. Gilbert sold and conveyed Sam Price's 25 acres of land situated above the north line of the tract involved in this suit to H. L. and Carter Price, they then and thereby recognized the claim and right of the defendant S. Howard, who claimed under Sam Price, to the 25 acres they owned south

of said line—the land in controversy—and they and all persons claiming under them afterwards, including the plaintiff, are forever bound and estopped from asserting title to any part of the tract of land involved in this suit." We do not think there was any error in this conclusion, based as it is upon the whole evidence, which is very fully set out in the fact findings, and the assignment, and several propositions thereunder, are overruled.

[3] Nor was there any error in the further conclusion of law of the trial court, as set out in the twenty-fifth assignment of error, as to the effect upon the title and claim of title of Wm. A. Brimbury and those claiming under him as heirs, of the agreement of Brimbury that Smith should take the 557-acre tract as his locative interest, and Brimbury should take the 723 acres, and his and their acquiescence in such settlement and division. The facts upon which this finding is based and the legal conclusion of the trial court hereinbefore set out in full render any further discussion unnecessary. The assignment is therefore overruled, with the several propositions thereunder.

The twenty-sixth and last assignment of error complains generally of the conclusion of the trial court in not rendering judgment for plaintiff. What we have said in disposing of other assignments of error necessarily disposes of this contrary to the contention of appellant.

We find no error in the judgment, and it is therefore affirmed.

Affirmed.