SAM G. JACKSON ET AL. v. FANNIE B. TONAHILL ET AL.

Decided February 8, 1908.

**1.—Appeal—Assignment of Error—Rule 31.**

An assignment of error based upon the admission of evidence, followed by a statement which fails to show what objection was made to the introduction of the evidence, or what ruling was made by the court upon such objection, and which does not refer to any bill of exception or page of the record from which the appellate court might ascertain what the objection and the ruling were, will not be considered on appeal.

**2.—Defective Deed—Ratification.**

Where a married woman and her husband sell and attempt to convey a

tract of land, receiving from the vendee a valuable consideration, and subsequently a third party claiming the same land obtains from the vendors for only a nominal consideration, a quit claim deed to himself upon the understanding that the last deed was executed for the purpose of correcting the defects in the first deed, the grantee in the quit claim deed will be held a trustee of the legal title for the benefit of the grantee in the first deed who paid the only valuable consideration and was therefore the equitable owner.

Appeal from the District Court of Anderson County.. Tried below before Hon. John J. Word, Special Judge.

*Gregg & Brown,* for appellants.—The court erred in that portion of his third finding of fact, wherein he found as a fact that Mary L. Hooker on February 14, 1872, with her husband and Geo. Holmes, signed and delivered to Emsley Garner a deed to the 109½ acres of the D. Parker survey and 191 acres of the J. Jordan. The deed was an absolute nullity insofar as it purported to be a conveyance of Mrs. Hooker's land, was not evidence of any act of hers. No witness testified that she signed the deed, therefore the court was without evidence to support such finding. Article 635, Revised Statutes; Berry v. Donley, 26 Texas, 737; Looney v. Adamson, 48 Texas, 621; McDaniel v. Garrett, 31 S. W. Rep., 721; Hampshire v. Floyd, 39 Texas, 106; Whetstone v. Coffey, 48 Texas, 278; Langton v. Marshall, 59 Texas, 299; Hill v. Spear, 48 Texas, 585; Rhine v. Hodge, 1 Texas Civ. App., 368; Blogge v. Moore, 23 S. W. Rep., 472.

The deed purporting to be a conveyance from Geo. L. Holmes and Mary M. Hooker and Jno. M. Hooker was properly executed as to Geo. L. Holmes and conveyed his entire interest in the two tracts of land, which made the grantee therein, Emsley Garner, joint tenant with Mrs. Mary L. Hooker, and Emsley Garner during his life conveyed to his son J. P. Garner 161 2-10 acres by metes and bounds, which was more than one-half of the two tracts of land belonging jointly to him and Mrs. Hooker, which leaves the remainder of the land the property of Mrs. Hooker. McAlister v. Farley, 39 Texas, 560; Peak v. Swindle, 68 Texas, 253.

The deed from Geo. L. Holmes et al. to Emsley Garner insofar as it purports to convey Mrs. Hooker's land is an absolute nullity and is not subject to ratification. A married woman may convey her separate real estate in consideration of money received when a prior attempt was made to sell the property, or without a valuable consideration at all, but in so doing she is not ratifying the void attempt but conveys the title at the time of executing the valid deed, and whether the grantee in the valid deed be in privity or not with the grantee in the void transaction, he gets the title, and the grantee in the void transaction can not be heard to complain, because he is not deprived of any valuable right. Speer on Married Women, sec. 42, page 46; Speer on Married Women, sec. 130, page 132; Robert v. Ezell, 11 Texas Civ. App., 176.

*Thos. B. Greenwood,* for appellees.—Just as the admissions, as a witness, of a party to a suit, as to the contents of a writing may

be received in evidence against him, without accounting for the absence of such writing, so may the admissions of a party, by his agent or attorney, as a witness, be received, when about a matter clearly within the scope of the authority of the agent or attorney at the date of the occurrence admitted, and at the date of the admission. The fact that the admission is under the sanction of an oath adds to its probative force. Hoefling v. Hambleton, 84 Texas, 519; Simpson v. Edens, 14 Texas Civ. App., 235; Missouri P. Ry. Co. v. Gernan, 84 Texas, 141, 142, 143; Missouri, K. & T. Ry. Co. v. Russell, 88 S. W. Rep., 379; Texas & P. Telephone Co. v. Prince, 36 Texas Civ. App., 462.

While the deed from Mrs. Hooker and husband and her brother did not convey Mrs. Hooker's half interest upon its original delivery for the want of her acknowledgment, yet it was admissible in evidence to show the attempted sale to Emsley Garner, and it was also admissible to show title, in connection with the subsequent deed of confirmation to Jackson; and especially was this the case in view of the fact that the deed was an ancient instrument and had been recorded more than thirty years. Besides, the undisputed evidence showed the execution of the deed by Mrs. Hooker and husband. Fordtran v. Perry, 60 S. W. Rep., 1000 to 1002; Williamson v. Work, 77 S. W. Rep., 266, 268; Logan's Heirs v. Logan, 31 Texas Civ. App., 295; Scales v. Johnson, 41 S. W. Rep., 829.

Since the appellant Sam G. Jackson obtained the legal title to an undivided half interest in the land in controversy through misrepresentation, which renders it unconscientious for him to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired, in favor of appellees, who are truly and equitably entitled to same. Schnieder v. Sellers, 98 Texas, 380, 390; Hendrix v. Nunn, 46 Texas, 141.

Since the deed to Jackson was made for the specific purpose of perfecting the title, which Mrs. Hooker formerly attempted to convey, it was made in the interest of appellees, insofar as the land in controversy is concerned, and hence Jackson holds the legal title in trust for appellees. Diffie v. Thompson, 90 S. W. Rep., 196; Hawkins v. Willard, 38 S. W. Rep., 365, 366; Finch v. Trent, 3 Texas Civ. App., 568; Allen v. Allen, 105 S. W. Rep., 54.

It was not necessary to create a resulting trust in favor of appellees, superior to any legal title in Jackson, that there should have been any agreement in their behalf. For, the resulting trust was not the result of contract at all. It arose by implication of law at the very moment of the acquisition of Mrs. Hooker's title to the land in controversy, because appellees stood, as to that land, in the place and stead of the estate of Emsley Garner, and the only and actual consideration for the conveyance of Mrs. Hooker's title was the twelve hundred dollars theretofore received by her and her brother from Emsley Garner. And this was so, though Jackson, as the nominal vendee, purposed and intended to deprive these appellees of all beneficial interest in the property. Matador Land & Cattle Company v. Cooper, 87 S. W. Rep., 237; Kempner v. Rosenthal, 81 Texas, 13; Baylor v. Hopf, 81 Texas, 637; Haywood

v. Scarborough, 102 S. W. Rep., 469, 471; Storer v. Lane, 1 Texas
Civ. App., 250; Mayes v. Manning, 73 Texas, 46; Elder v. First
Nat. Bank, 91 Texas, 423, 424.

The deed from Mary L. Hooker to Emsley Garner took effect as
to her interest as soon as she executed, in conformity to law, another
deed intended by her to have that very effect. Scales v. Johnson,
41 S. W. Rep., 829; Halbert v. Hendrix, 26 S. W. Rep., 911.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to
try title brought by appellees against appellants. The land in con-
troversy is a part of a tract of 109½ acres on the Dickerson Parker
survey in Anderson County. The case was tried in the court below
without a jury and judgment rendered in favor of plaintiffs. The
following are the findings of fact and conclusions of law filed by
the trial court:

*Findings of Fact.*—"First.   On January 29, 1869, John Holmes
was the owner of 109½ acres of the Dickerson Parker survey, which
includes the land sued for, being a tract of land of about 15 or 20
acres, and also of 191 acres adjacent land upon the Joseph Jordan
league, both tracts treated as one farm.

"Second.   On January 29, 1869, John Holmes conveyed both said
109½ and 191 acre tracts of land in one deed to his son, Geo. L.
Holmes, and his daughter, Mary L. Hooker, wife of John Hooker,
share and share alike, in consideration of love and affection.

"Third.   On February 14, 1872, Geo. L. Holmes, M. L. Hooker,
and her husband, Jno. M. Hooker, signed and delivered a deed to
Emsley Garner, for the recited consideration of Twelve Hundred
Dollars cash in gold, to the 109½ acres of the Dickerson Parker
survey and to the 191 acres of the Joseph Jordan survey. This
deed was signed by Geo. L. Holmes, Mary L. Hooker, and John M.
Hooker, and was also signed by Wm. Holmes and J. P. Garner
as attesting witnesses. On February 14, 1872, the deed was properly
proven up for registration by the attesting witness, J. P. Garner,
and it was recorded on February 14, 1872, in the deed records of
Anderson County, Texas. This deed was never acknowledged by
either Mary L. Hooker or John M. Hooker.

"Fourth.   In the fall of 1885 Emsley Garner departed this life
leaving a will, under which the land sued for was devised to Margaret
Belle Dye and Charles R. Garner. This will was probated on January
18, 1886, by order of the County Court of Anderson County, Texas,
and this order having been appealed from the will was again ad-
mitted to probate by order of the District Court of Anderson County,
Texas, entered January 14, 1887. By the terms of said will Emsley
Garner disposed of all of the two tracts of land described in deed
from Geo. L. Holmes, J. M. Hooker and wife to him, that he had
not disposed of prior to his death.

"Fifth.   The will of Emsley Garner was contested by J. P. Garner
et al., and J. P. Garner et al. also instituted a suit for the partition
of certain property alleged to belong to the community estate of
Emsley Garner and his deceased wife, Melissa Garner, who was

their mother. This contest and suit was determined by a judgment of the District Court of Anderson County, Texas, rendered at its November term, 1886, whereby there was adjudged to J. P. Garner the 161 2-10 acres of land which is fully described in plaintiff's first amended original petition and whereby the land sued for was expressly adjudged to Margaret Belle Dye and C. R. Garner. The land sued for was not specifically described in the judgment awarding same to Margaret Belle Dye and C. R. Garner, but the judgment of the court adjudged to them all of the land not awarded to other parties, and the land sued for was not awarded to anyone else. This judgment recited that the 161 2-10 acres was adjudged to J. P. Garner because it had been conveyed to him by his father, Emsley Garner, as an advancement, during the lifetime of his mother, Melissa Garner, who is shown by the recitals of the judgment to have died November 18, 1883.

"Sixth. On December 10, 1887, J. P. Garner conveyed to defendant, Sam G. Jackson, the 161 2-10 acres of land fully described in plaintiffs' first amended original petition, by general warranty deed, for a recited consideration of $807.

"Seventh. Neither Mary L. Hooker nor John M. Hooker ever claimed any title to any of the land described in the deed to Emsley Garner, of date February 14, 1872, subsequent to that date, and J. P. Garner has never claimed any part of the land sued for.

"Eighth. About three years ago the defendant Sam G. Jackson had a conversation with a brother of J. P. Garner, named Sam Garner, in which Sam Garner stated that the land was a vacant strip belonging to no one, and he believed that any man who would fence the land sued for could hold it; and acting upon this suggestion, without other claim of right, the defendant Sam G. Jackson took possession of the land sued for, constructing a wire fence around it.

"Ninth. Some years ago in a partition between Margaret Belle Dye and husband and C. R. Garner the land sued for was allotted by agreement to C. R. Garner. Prior to the institution of this suit C. R. Garner died, leaving Mrs. Fannie B. Tonahill, his widow, and Virgil T. Garner and John Garner, his children, as the sole heirs to his estate, and on January 16, 1906, Margaret Belle Dye and husband released unto Virgil Garner and John Garner all of her interest and claim in the land sued for.

"Tenth. On April 16, 1906, the plaintiffs instituted this suit and the defendants employed Messrs. Gregg & Brown as attorneys to defend same. About August 11, 1906, Mr. Brown, of the firm of Gregg & Brown, acting at the instance and in behalf of the defendant Sam G. Jackson, drew up a quitclaim deed from John M. Hooker and Mary L. Hooker to Sam G. Jackson of their right and title and interest in and to the 109½ acres of the Parker survey. This quitclaim deed recites a consideration of Five Dollars cash in hand paid. The deed was transmitted to Mrs. Hooker, who resides in Wise County, by mail, accompanied by a letter from Mr. Brown, as attorney for defendant Sam G. Jackson, stating that on February 14, 1872, Mrs. Hooker and husband had executed a deed to Emsley Garner to the 109½ acres of Dickerson Parker survey,

and that Sam G. Jackson was now the owner of the land and that Mr. and Mrs. Hooker had never acknowledged the deed to Emsley Garner, and that they were requested to sign and acknowledge the deed enclosed to Jackson to the 109½ acres. In response to this request Mr. and Mrs. Hooker signed and acknowledged the quitclaim deed to Sam G. Jackson to the 109½ acres; Sam Jackson paid nothing as the consideration for this deed·save and except the cost of acknowledgments, to wit: $1.50. The only consideration received by Mr. and Mrs. Hooker for their half interest in the 109½ acres of land and in the 191 acres of land came from the Twelve Hundred Dollars in gold paid by Emsley Garner at the date of the attempted conveyance to him. I find that the quitclaim deed was executed by Mrs. Hooker and husband for the purpose of ratifying and correcting the deed formerly signed by them."

*Conclusions of Law.*—"First. The plaintiffs were the owners of the undivided half interest. in the land formerly belonging to Geo. L. Holmes at the date of the institution of this suit. The conveyance from Mary L. Hooker and husband to Sam G. Jackson conveyed the legal title to an undivided one-half interest in the land sued for to Sam G. Jackson; but this deed conveyed a superior equitable title to such undivided half interest to plaintiffs; the legal effect of the deed from Mrs. Hooker and husband to Jackson is exactly the same as though Mrs. Hooker and husband had executed a deed formally confirming the title which she undertook to convey to Emsley Garner. That .was the only purpose and object of the deed to Jackson and it can not be properly given any other effect."

We adopt these fact findings as our conclusions of fact.

The first assignment of error presented in appellants brief with its accompanying propositions and statement is as follows:

"The court erred in admitting in evidence over defendants' objection, verbal testimony of the contents of the letter written to Jno. M. Hooker and wife by P. W. Brown, requesting the execution of the quitclaim deed to Sam G. Jackson to 109½ acres of the Parker survey, as shown by bill of exceptions No. 2."

First Proposition. "The original letter itself is the best evidence of its contents; and before secondary evidence of the contents of the letter will be admitted it must be proved that the letter is lost or destroyed, or is beyond the jurisdiction of the court."

Second Proposition. "Until it has been shown that a letter is lost, destroyed or beyond the jurisdiction of the court, verbal proof of its contents is not admissible."

Statement. "P. W. Brown, one of the attorneys of the defendants Jacksons, testified that after his firm had been employed in this case he wrote a letter to Jno. M. Hooker and his wife, stating that in examining the title to the 109½ acres of the Dickerson Parker survey he found that years ago they had signed a deed to land, including this tract; that Mrs. Hooker had never acknowledged the deed; that Sam G. Jackson was now the owner of the 109½ acre tract, and in order to perfect his title requested Jno. M. Hooker

and wife, Mary L. Hooker, to execute the following quitclaim deed, as enclosed without signatures and acknowledgments."

This statement is insufficient to require a consideration of the assignment, in that it fails to show what objection was made to the introduction of the evidence or what ruling was made by the court upon such objection, and does not refer to any bill of exceptions or any page of the record from which this court can ascertain what objection was made to the evidence or what ruling was made by the trial court. It is well settled that an assignment not supported by a sufficient statement should not be considered by an Appellate Court, and it is clear that the statement in question is insufficient under the rules prescribing the manner in which cases should be presented on appeal. Rule 31 for Courts of Civil Appeals; 94 Texas, 660; Westinghouse v. Troell, 30 Texas Civ. App., 200; Texas & N. O. Ry. Co. v. Lee, 32 Texas Civ. App., 23.

The second and third assignments presented in appellants' brief assail the findings of the trial court that Mrs. Hooker signed and delivered to Emsley Garner a deed to the land in controversy on February 14, 1872, and that the quitclaim deed executed by Mrs. Hooker and husband to appellant was made for the purpose of ratifying the deed to Emsley Garner of February 14, 1872. We think both of these findings are amply supported by the evidence. The testimony of Mr. Brown shows that the sole consideration for the execution of the quitclaim deed to appellant was the fact that Mrs. Hooker and her husband had previously sold and conveyed the land to Emsley Garner and received the consideration therefor, but had failed to properly acknowledge the deed. The execution by Mrs. Hooker of the quitclaim deed for no other consideration than that stated by Mr. Brown, who testified with perfect candor and without the least evasion, was an admission by her that she had previously sold the land to Garner and signed and delivered a deed therefor, and the trial court properly so found, and no other conclusion could have been reached from this testimony than that the deed to appellant was intended as a ratification of the previous deed to Garner.

The next assignment complains of the finding of the trial court that appellees were the owners of an undivided one-half of the land under the deed from Geo. L. Holmes and Mrs. Hooker and husband. The contention under this assignment is that only the one-half interest of Geo. L. Holmes passed to Garner under this deed, and Garner having appropriated more than one-half of the land by his sale and conveyance thereof, his heirs would have no interest in the remaining one-half, which belonged to Mrs. Hooker. It is unnecessary to pass upon this issue in view of our conclusion that the quitclaim deed from Mrs. Hooker to appellant inured to the benefit of appellees. If we are right in this conclusion it is immaterial whether at the time of the execution of said deed Mrs. Hooker owned the whole or only one-half of the land, since her title to whatever portion of the land she owned passed by said deed to appellees.

The remaining assignments complain of the trial court's conclusion of law that the effect of the quitclaim deed from Mrs. Hooker was to ratify the deed previously made to Emsley Garner and vest

title to the land in appellees. The evidence shows that the only consideration for the execution by Mrs. Hooker of the quitclaim deed to appellant was the payment to her by appellees' ancestor of her portion of the purchase money recited as the consideration in the deed which she had previously ˙signed and delivered, but had failed to properly acknowledge. We can see no distinction in principle between a case of this kind and one in which land is purchased by one person with the money of another. In such case a resulting or constructive trust will be declared, and the party who takes the title will hold it in trust for the one whose money paid the consideration, and this without regard to the question of whether there was any agreement between the parties that one would purchase for the benefit of the other. Kempner v. Rosenthal, 81 Texas, 13; Matador Land & Cattle Co. v. Cooper, 87 S. W. Rep., 237.

We find no error in the record and the judgment of the court below is therefore affirmed. (Justice McMeans not sitting.)

*Affirmed.*

Writ of error refused.