**CLARK et al. v. HUMBLE OIL & REFINING CO. et al.***

No. 4228.

Court of Civil Appeals of Texas. Texarkana.
Jan. 17, 1933.

Rehearing Denied Jan. 26, 1933.

*Writ of error granted.

evidence adduced presented an issue of fact, which, if determined by the jury in her favor, would entitle her to recover. The appellees contend otherwise that the court did not err in giving a peremptory instruction in favor of them, for the evidence conclusively established their right to the same. It is believed that it may not be held that there was error in taking the case away from the jury, for in the state of facts proven there was no issue of fact arising to be submitted to the determination of the jury. The error was, as concluded, in instructing the verdict in favor of the defendants instead of the plaintiff for the facts proved at the trial to exist established the right of the plaintiff to recover her interest in the land. The instruction should have directed the verdict in favor of the plaintiff Margaret Coolidge because: (1) The several purported leases of her interest in the land through the community administration and the guardianship proceedings were legally void in the first instance, and she was not prevented from enforcing her rights by subsequent confirmation nor even by estoppel through writings or personal conduct; and (2) assuming a valid and legal confirmation of the guardian's lease by Margaret Coolidge, still such lease had, as conclusively proven, expired by its terms for failure of payment of rental at or before the end of the period designated in the lease.

The legal consequences of the facts, in support of the ruling above made, are here given and set forth at length. The attempted leases in 1928, both through the community administration and guardianship proceedings, as to the undivided interest in the land of Margaret Coolidge, were treated by the parties in the trial of the case, not as voidable, but as legally absolutely void in the first instance. This is a vital fact of the case, for if Margaret Coolidge may in any wise be deprived of her right in the land, it must rest in her acts and conduct or estoppel after she became twenty-one years old. The evidence in behalf of the appellant is to the effect that she was induced to execute the instrument tendered and presented on September 12, 1930, and about which the controversy in this case arises, upon the representation of the appellee's agent that it was for the purpose only of rectifying mistakes in the purported guardian's lease bearing the date on its face of April 25, 1928, in description of the land, and in the legal steps taken in making the lease by the guardian. That she executed the instrument purely in the purpose and intention of confirming such infirmities of her guardian's lease. That at the time she was three months past twenty-one years old and had no knowledge that the guardianship over her was brought to a close by reason of her majority. The testimony of the agent of the appellee goes to

McEntire, James & Clower, of Henderson, for appellants.

J. Q. Weatherly, R. E. Seagler, and John E. Green, Jr., all of Houston, for appellees.

LEVY, Justice (after stating the case as above).

The pertinent point for determination is that of whether or not the peremptory instruction to the jury was warranted, directing a verdict in favor of the defendants. The appellant insists that the verdict should have been directed in her favor, or, if not, the

conclusively show that he likewise intended the instrument so presented on September 12, 1930, to be only a confirmatory lease of the infirmities of the prior leases of 1928 made by the administrator and guardian. He testified that his purpose in preparing and presenting and having appellant execute the particular instrument was to have it be "a ratification or correction lease correcting the field notes of the former lease which Mrs. Price executed (as guardian) covering Margaret's interest." In the circumstances stated it 'is believed that the contention of appellee should be upheld that neither fraudulent representation nor misrepresentation can be deemed as arising as an issue of fact, as being an imposition or deceit on appellant. It is clear that the appellant and the agent of appellee each acted in the same common purpose of having a confirmatory lease only executed, and that the instrument to be executed was intended to be in the nature and to operate only as "an instrument to correct the field notes and guardianship proceedings." The appellant was in no wise misled or deceived in point of fact in that respect, and the agent of appellee never in point of fact acted with the purpose of deception. Under the conceded rule, in order to say that fraud is proved, it must appear that false representation or misrepresentation was made.

 Misrepresentation being absent, as we conclude, in obtaining the execution of the instrument presented on September 12, 1930, the vital question for decision is: What legal leasehold rights or estate can the appellee be regarded as having acquired in the land as against appellant by virtue of such instrument? The particular instrument reads:

### "Oil, Gas and Mineral Lease.

"This agreement made this 25th day of April, 1928, between L. H. Moore and wife, Mrs. L. H. Moore, and Margaret Coolidge, a feme sole, and Mrs. Lou Emma Price, lessor (whether one or more) and Humble Oil and Refining Company, lessee, witnesseth:

"Lessor in consideration of $10.00 in hand paid, of the royalties herein provided, and of the agreement of the lessee herein contained, hereby grants, leases, and lets exclusively unto the lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas, and all other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport, and own said products, and housing its employees, the following described land in Rusk County, Texas, to-wit: (Here follows description of the land). It is the intention of the lessor (here follows the provisions and terms of the previously executed leases in April,

1928). In witness whereof this instrument is executed on the date first above written." (Here follows the signatures of the lessors named.)

The language of the new instrument with its special recitals shows the intention of the parties to be, not to create any new duty or obligation or quitclaim any present interest or estate in the land, but only to execute an instrument made to effect or replace a transaction occurring at a time already long past—on the "25th day of April, 1928." There are no words in the instrument which by their own force would operate to create a new leasehold interest or estate presently as well as in the future. By its terms its execution was made to wholly relate back and be retroactive. The new instrument begins with the express statement of, "This agreement (of lease) made this 25th day of April, 1928," and at the conclusion expressly mentions the execution and date of the instrument by reference to the date theretofore given, namely: "In witness whereof this instrument is executed on the date first above written." It conforms entirely to the terms and provisions of the leases which had been previously executed through the community administration and the guardianship proceedings bearing date of "April 25, 1928," except in respect to the correction of certain field notes of the land as therein described. The language of the instrument is plain and unambiguous. If the true purpose of its execution was to be a present conveyance as of September 12, 1930, why date it more than two years before? It is thought the new instrument would properly be construed as intended by the parties to relate to a leasehold interest which had been created previously and to operate merely as confirmatory in character of infirmity of description of the land, and not as creating a new or present leasehold right or estate in the land. In this legal situation the new instrument could not be held operative as a valid and legal confirmation and ratification of the leases previously made, so far as relates to and concerns Margaret Coolidge. Margaret Coolidge, in view of the circumstances having special relation to her, must be regarded as standing independently of both her mother, Mrs. Price, and her sister, Mrs. Moore. In executing the previous leases as concerns their individual interests in the land, Mrs. Price and Mrs. Moore were doing so as adults and they were acting wholly independent of any exercise of power on the part of the probate court. Their previous leases were not as to them legally void, and it was allowable to them to render effectual by confirmation a defective, even voidable, deed or lease and to antedate and relate back to the original lease. Margaret Coolidge, though, at the time of the previous leases in evidence was a minor, and such purported leases as

to her interest in the land was not made independent of any exercise of power on the part of the probate court or of any statutory community administration. The original leases were made in 1928, and through community administration and guardianship, respectively, and they were treated and regarded in the trial of the case, not as voidable, but as legally absolutely void instruments in the first instance. Such leases must be treated on this appeal as absolutely void in the first instance. Therefore, as a legal consequence at the time of tendering this new instrument on September 12, 1930, for execution, the appellee oil company had no legal leasehold interest or estate whatever in the land so far as concerns the interest therein of Margaret Coolidge. The new instrument having entirely a retroactive operation, the execution of it by Margaret Coolidge could not be held effectual and binding upon her as her confirmation and ratification of the original void leases of her interest through community administration and guardianship. The act in legal effect would be simply a continuation of the former leases as an act of guardianship and administration, and not a distinct action with an operative effect of its own presently and apart from the original previous leases. In general, contracts which are void from illegality because contrary to or opposed to statute cannot be confirmed and ratified, because the confirmation and ratification itself would be opposed to the statute.

It is the established principle that confirmation may make good a voidable or defeasible estate, but cannot operate upon or aid an estate which is void in law. 1 Devlin on Real Estate (3d Ed.) § 18, p. 30; 14 Tex. Jur. § 23, p. 776; Breitling v. Chester, 88 Tex. 586, 32 S. W. 527, 529; Montgomery v. Hornberger, 16 Tex. Civ. App. 28, 40 S. W. 628, 629; 1 Warvelle on Vendors, § 338, p. 402. As stated in the Chester Case, supra: "It would seem that, the deed as originally delivered being void, it could be re-executed but not ratified so as to give it a retroactive effect." As stated in the Montgomery Case above: "It may be true, as contended by appellants, that the deed of 1845 was void because it was not acknowledged by Mrs. Sawyer. It is also true that, being a nullity, it could not be confirmed by the subsequent deed, so as to have any validity of its own. The attempt to confirm it could not change the fact that the title had not previously passed out of Mrs. Sawyer, or, retroactively, impart to the nullity an efficacy which it had not before possessed. But at the date of the second instrument Mrs. Sawyer was still the owner of the land and had capacity to convey it by complying with the law. An attempt to confirm a void deed * * * may fail to effect that purpose, but may still operate as a new grant." In the case of Jackson v. Tonahill, 49 Tex. Civ. App. 169, 108 S. W. 178, the original deed had not been acknowledged, and a quitclaim deed was signed, acknowledged, and delivered by the grantors, Mr. and Mrs. Hooker. The effect of the subsequent quitclaim deed was that of the re-execution of a deed and which presently created an estate in confirmation and ratification of the estate previously intended to be passed. The difference, as may be seen, is that in the present case the instrument as signed by Margaret Coolidge was entirely retroactive, and did not of itself look to nor relate to any new or further estate and did not in any wise change the fact that the estate in the land of Margaret Coolidge, a minor, had never legally passed out of her in 1928 by the leases attempted to be made. The rights of appellant to her interest in the land remained vested in her the same after the execution of that instrument as they were before. If the new instrument tendered on September 12, 1930, for signing had been a quitclaim deed or in the nature or effect of one, the situation here would be different and the consideration paid 'the guardian would have been sufficient, and a new or different consideration would not have been necessary nor required.

The appellee, however, contends that the previously executed leases purport to cover the entire land and the interest of the lessors therein, and the subsequently executed royalty deeds to J. T. Perryman, Jr., and the Salt Mount Oil Corporation convey a portion of the royalty subject to the appellees' lease, and therefore the doctrine is made applicable of ratification or acquiescence by tenants in common of the acts of each other, and Margaret Coolidge would be estopped from denying the effect thereof. On April 6, 1931, a deed was executed by the mother and the sister and Margaret Coolidge conveying to J. T. Perryman, Jr., "an undivided ⅛ interest in the oil, gas and other minerals in and under and that may be produced from the following described land" (here follows description by metes and bounds of the land involved in suit). The deed recites:

"Said land being now under an oil and gas lease executed in favor of the Humble Oil and Refining Company, it is understood and agreed that this sale is made subject to the terms of the said lease, but covers and includes ⅛ of all the oil royalty and gas rental demanded to be paid under the terms of the said lease, insofar as it covers the above described property.

"It is understood and agreed that ⅛ of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee, and in event that the above described lease for any reason be-

comes cancelled or forfeited, then and in that event, an undivided ⅛ of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by the said grantee, he owning ⅛ of all oil, gas and other minerals in and under said lands together with ⅛ interest in all future rents."

On June 6, 1931, the same parties executed and delivered a like royalty deed to the Salt Mount Oil Corporation conveying an undivided one-eighth interest in the oil, gas, and other minerals in and under and that may be produced from the tract of land described. The deed contains the recitation as follows: "It is the intention of the parties to this mineral deed to cover all the land now covered by oil and gas leases held by the Humble Oil and Refining Company et al. with reference especially to that certain oil and gas lease executed by Mrs. W. L. Price, Gdn., to Humble Oil and Refining Company of date September 12, 1930, and recorded in Vol. 186, p. 25, Deed Records of Rusk County, Texas, reference to which is here made for more complete description." Then follows the same recitations as above copied from the Perryman deed. The lease referred to as executed by Mrs. W. L. Price, guardian, was a lease as to the interest of the minor William Coolidge.

The recital was true that the land was under a gas and oil lease executed in favor of the Humble Oil & Refining Company so far as pertains to the separate interest in the land of each Mrs. Price and her married daughter, Mrs. Moore, and the minor, William Coolidge. It would have special application to them and be an express recognition of the lease previously executed by them as to their individual interests in the land as existing and valid as to both of them. The lease referred to could truly exist as to some of the parties and wholly fail in legal validity as to the other party. As to Margaret Coolidge the reference to the lease of appellee would not have special application or application at all, and would amount merely to an incidental statement of a fact and not of adoption or acquiescence of the lease as covering her interest in the land. The oil company would be chargeable with notice of the interest of Margaret Coolidge by the leases to which it must look for its interest and estate in the land. The oil company would know that the attempted lease in April, 1928, by Mrs. Price as community administratrix was not valid as to Margaret Coolidge's interest. The oil company would know that the purported lease by Mrs. Price as guardian was not valid as to Margaret Coolidge. The authority of Mrs. Price to act and bind Margaret Coolidge, a minor at the time, in the transaction did not legally exist. Each lease on its face and by its terms reveals the intention to lease and pass no more than the title or distributive share and estate in the land of the lessors therein named, and not a share and estate that they or either of them did not hold or claim. Although purporting to have the lease cover the whole field notes of the tract, yet each tenant executing the lease in legal effect was letting her own undivided share and portion therein. Article 1290, R. S. In the execution of the lease Mrs. Moore merely joined with her mother, Mrs. Price, who was acting for herself "individually" and who was assuming to act for the minors respectively "as community survivor" and "guardian." Such character of execution and transfer of estate in the land would affirmatively show that Mrs. Moore and Mrs. Price were not attempting to pass all interest and estate in the land as if they were individually the sole owner of the same. They clearly were not undertaking to represent themselves as the sole owners of the land. Each of the first two leases contains the clause: "If the lessor owns an interest in said land less than the entire fee simple then the royalties and rentals to be paid the lessor shall be reduced proportionately." The purported lease to the Humble Oil Company presented for execution on September 12, 1930, and antedated to be made on "April 25, 1928," and which instrument was legally valid only as to Mrs. Moore and her husband, contains the clause: "It is the intention of the lessors and we do hereby lease all the land we own in the above and adjoining Surveys whether the same was acquired by purchase, inheritance, or limitation or otherwise, it being the intention to include all land owned or claimed by the lessors in said Survey or Surveys." The language "all the land we own" clearly indicates the interest and estate in the land which the lessors named intended to pass and confer in the leasehold estate or interest. In view of the evident situation shown, can it be held that the recital in the mineral deeds is sufficient and effective to predicate estoppel against Margaret Coolidge by ratification or acquiescence from asserting her interest or estate in the land? It is believed the doctrine in view sought to be applied may not be made applicable to the facts of this case. It is the accepted rule that a tenant in common not authorized by his cotenants cannot execute a lease that will bind them without subsequent ratification. 38 Cyc. pp. 101–104; 1 Devlin on Deeds (3d Ed.) § 109. It was not shown by the evidence that Margaret Coolidge did any positive acts of acceptance of benefits or oil royalties arising under or resulting from the lease to the oil company. There was no producing oil well on the land until from and after July 14, 1931. This suit was filed at a time shortly after the well came in and prior to September 22, 1931. The rule that tenants in

common, being owners of several interests, may ratify the acts of each other or acquiesce therein, is made applicable only against the nonconsenting tenant where there is attempted conveyance or lease, not of an undivided distributive share or estate in the land, but of the entire tract or some specific portion of the whole of the common property. 38 Cyc. p. 111. Unless the tenants in common signing the lease purported to lease all the land as if they were the sole owners, there would be absent the elements of ostensible ownership, or of ostensible agency which is necessary to be proven in order to predicate estoppel or preclusion to deny the existence thereof. There would be no such appearance of power in dealing with the rights or estate of the nonjoining tenant on which to found ratification and acquiescence of the particular act done or transaction. Ratification applies to agency. Mondragon v. Mondragon, 113 Tex. 404, 257 S. W. 215.

The present case is quite unlike the cases cited. In the case of Merriweather v. Jackson (Tex. Civ. App.) 38 S.W.(2d) 599, the mother undertook to convey to the oil company the specific portion of 5 acres of land out of a tract of the common property covering 162 acres. Later the mother and two daughters undertook to lease 157 acres of the tract, describing it as "containing 157 acres after deducting five acres off of the Northeast end of the tract conveyed to the Luling Oil Company." The circumstances and recital there went clearly to show that sufficient assent had been given by the daughters to the prior conveyance of the mother to make it operative entirely. The act of recognition was so distinct and emphatic as to preclude the daughter from afterwards denying that the mother owned and held the entire five acres. In the case of Texas & Pacific Coal & Oil Company v. Kirtley (Tex. Civ. App.) 288 S. W. 619, two tenants in common executed an oil lease and the lessees drilled productive oil wells. The cotenant who did not join in the execution of the lease did join in the orders, and took his proportion of the oil royalty after the oil was produced. Such acts on the part of the nonjoining tenant in dealing with the oil produced as his part of the oil royalty under the lease was strong evidence of acquiescence and consent to the leasing. He not only recognized the lease as existing, but actually took and claimed the royalty benefits resulting from it. In such affirmative circumstances, ratification and assent may be reasonably inferred, as was done by the court. In the present appeal Margaret Coolidge received no benefits and therefore that rule would not be applicable. 2 C. J. § 115, p. 495. In the case of Van Deventer v. Gulf Production Co. (Tex. Civ. App.) 41 S.W.(2d)

1029, 1038, the facts show that the mother and sister executed a lease of the entire land, and afterwards the brother, L. Q. Van Deventer, joined with his sister and mother in the execution of an option contract to purchase 72½ acres of the 120 acres leased, and subsequently in executing a warranty deed which recognized that the land was encumbered by the oil lease. Further, as stated by the court, "Also, we have the additional fact that on the testimony of his mother he [L. Q. Van Deventer] received from her a part of the proceeds of the sale of the 25 acres [which was under lease] of land as well as the other lease money." The court thought, and correctly so, that the circumstances of the case brought it within the ruling in the case of Texas & Pacific Coal & Oil Co. v. Kirtley, supra, as supporting estoppel by ratification and acquiescence on the part of L. Q. Van Deventer. There was evident not only the recital in the deed of the existence of the lease, but the positive acts of L. Q. Van Deventer of accepting benefits and sharing in the consideration paid for the lease. Such acts of L. Q. Van Deventer amount in effect to the consent to the lease as existing and of intention to carry it in effect. In the present case there was no act of acceptance of benefits by Margaret Coolidge.

Upon another ground, however, we think the plaintiff would be entitled to recover, assuming the instrument presented on September 12, 1930, for execution was legally valid as a lease by Margaret Coolidge. Such lease must be regarded as having expired by its terms for lack of payment of rental to Margaret Coolidge on April 25, 1931. The oil company made payment of rental in the Overton bank but to Mrs. Price as guardian of Margaret Coolidge. The rental was never tendered by the bank nor the oil company to Margaret and there was no offer of tender to her or direction to have it credited to her in the bank. It was not shown that the bank had the power to appropriate the money to the credit of Margaret. There is no dispute as to these facts. The instrument expressly provides for forfeiture for nonpayment of rentals, annually from the date of the instrument (which was April 25, 1928), unless drilling operations were begun. Drilling operations had not begun before April 25, 1931.

Therefore, in the light of the grounds and reasons above reviewed, it is concluded that the judgment in favor of the appellees should be reversed and here rendered in favor of the appellant Margaret Coolidge Clark, as against the appellees the Humble Oil & Refining Company and the Gulf Production Company, decreeing cancellation of the oil and gas lease upon the 440-acre tract of land executed on September 12, 1930, so far as the lease pertains to and affects her

one-sixth undivided interest in the 440 acres. The cost of this appeal and of the trial court to be taxed equally against the appellees.