## HUMBLE OIL AND REFINING COMPANY ET AL. V. MARGARET C. CLARK ET VIR.

No. 6464.   Decided November 20, 1935.
(87 S. W., 2d Series, 471.)

*C. L. Stone,* of Henderson, *R. E. Seagler* and *J. Q. Weatherly,* both of Houston, for plaintiffs in error.

The lease which Margaret Clark assigned, acknowledged

and delivered on September 12, 1930, after she became twenty-one years of age, was a valid instrument from its inception and enforceable according to the terms and provisions thereof. 14 Texas Jur., 776, sec. 23; Id., 873, sec. 99; Id., 818, sec. 56; 18 C. J., 187; R. S., 1925, Art. 1291.

*McEntire, James & Clower*, of Tyler, for defendants in error.

The lease of September 12, 1930, was merely for the purpose of making corrections and was binding only to the extent of correcting the guardianship lease, and the plaintiff in error was estopped to claim that it was a valid and binding lease of that date. Pure Oil Co. v. Swindall, 58 S. W. (2d) 7; Bell v. Gaines, 237 S. W., 346; Oar v. Davis, 105 Texas, 479, 151 S. W., 794; 1 Warvelle on Vendors, 402.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by Mrs. Margaret Coolidge Clark, joined by her husband, against the Humble Oil & Refining Company and the Gulf Production Company for the cancellation of a certain oil and gas lease, so far as it concerns Mrs. Clark. The grounds alleged for cancellation are (1) that the lease was obtained by fraud; (2) want of consideration moving to Mrs. Clark, and (3) in the alternative, that the lease has terminated by virtue of its terms. The case was tried before a jury, but at the conclusion of the testimony the trial court peremptorily instructed a verdict for the defendants, and judgment was entered accordingly. The Court of Civil Appeals reversed said judgment and rendered judgment for Mrs. Clark. 57 S. W. (2d) 597.

The facts are undisputed. Omitting immaterial details, they are substantially as follows:

In the year 1915, W. H. Coolidge died intestate, leaving surviving him his wife, Lou Emma Coolidge, and three minor children, namely, Nannie, Margaret and William. W. H. Coolidge owned a tract of 440 acres of land in Rusk County. It was community property of himself and wife. Some years after W. H. Coolidge died, Nannie married L. H. Moore and Mrs. Coolidge married W. L. Price. Mrs. Price was appointed guardian of the estate of her two minor children, Margaret and William. In 1928, an oil and gas lease on the 440 acres of land was executed to J. M. Wood by Nannie and her husband, and Mrs. Price and her husband, and by Mrs. Price as guardian of Margaret and William. The instrument bore date April

25, 1928. For the purpose of this opinion this instrument will be treated as utterly void, so far as the interest of said minors were concerned. Wood assigned this lease to the Humble Company. The company, up to September 12, 1930, paid all annual rentals provided in the lease. Each successive annual rental sum was paid to Mrs. Price, except one-sixth which was paid to Nannie. Margaret became twenty-one years of age on June 17, 1930. Shortly after this, the Humble Company discovered some defects in the field notes contained in the lease of 1928, and also discovered the invalidity of said lease so far as the interest of Margaret and William in the land was concerned. The company prepared two new leases, one was to be signed by Mrs. Price, Nannie and her husband, and Margaret Coolidge, the latter being then of age and unmarried. The other lease was to be signed by Mrs. Price as guardian for William. Both of these leases were executed the same day, but no further notice need be taken of the last mentioned instrument, as it is not involved in this suit. The other instrument, which is the one in controversy, was duly signed, acknowledged and delivered by the grantors, Nannie and her husband, Mrs. Price and Margaret Coolidge, on September 12, 1930. The language of this new lease is identical with that of the old lease except in the following respects: (1) Naming the parties; (2) the field-note calls; and (3) the recital of the cash down payment of consideration—the old lease reciting same to be $440. The Humble Company assigned to the Gulf Production Company one-third interest in the new lease.

The new lease, which is attacked by Mrs. Margaret Coolidge Clark, reads, so far as need be stated, as follows:

## "OIL AND GAS MINERAL LEASE.

"This agreement made this 25th day of April, 1928, between L. H. Moore and wife, Mrs. L. H. Moore, and Margaret Coolidge, a feme sole, and Mrs. Lou Emma Price, lessor (whether one or more), and Humble Oil & Refining Company, Lessee, Witnesseth:

"1. Lessor, in consideration of 10 Dollars in hand paid and of royalties herein provided, and of the agreements of the lessee herein contained, hereby grants, leases and lets unto lessee for the purpose of investigating, exploring, prospecting, drilling, and mining for oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telephone lines, and other structures thereon to produce, save, take care of, treat, transport, and own said products, and housing its employees,

the following described land in Rusk County, Texas: (Here follows the description of the 440 acres of land.)

"2. Subject to the other provisions herein contained, this lease shall be for a term of ten years from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land hereunder.

"3. The royalties to be. paid by lessee are: (a) on oil, one-eighth of that produced and saved from said land, * * *; (b) on gas, including casing-head gas or other gaseous substance, produced from said land and sold or used off the premises * * * the market value at the well of one-eighth of the gas so sold or used * * *; (c) on all other minerals mined and marketed, one-tenth, either in kind or value at the well or mine, at lessee's election, except that on sulphur the royalty shall be fifty cents (50c) per long ton. * * *

"4. If operations for drilling are not commenced on said land on or before one year from this date, the lease shall then terminate as to both parties, unless on or before such anniversary date lessee shall pay or tended to lessor, or to the credit of lessor in the First State Bank at Overton, Texas, (which bank and its successors are lessors' agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of Four Hundred and Forty and no/100 Dollars ($440.00), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental may be made by check or draft of lessee mailed to said bank on or before such date of payment. * * *

"9. Lessor hereby warrants and agrees to defend the title to said land. * * *

"In witness whereof this instrument is executed on the date first above written."

The notarial certificates of acknowledgement of the several grantors or lessors are in due form and bear date September 12, 1930.

In the latter part of March, 1931, the Humble Company sent by mail to the First State Bank at Overton two checks to cover annual rental. One was in the sum of $220 payable to Mrs. W. L. Price and W. L. Price in their individual capacity, and the other was for the sum of $220 payable to "Mrs. W. L.

Price as guardian of William and Margaret Coolidge, Minors." The bank made deposit of the money in accordance with the checks. None of the money derived from the check to Mrs. Price, as guardian, was ever credited on the bank's books to Margaret Coolidge, and none has been paid or tendered to her. The money is still in the bank to the credit of Mrs. Price as her guardian. In June, 1931, the Humble Company began drilling operations on the land and on July 14, 1931, brought in a producing oil well. This suit was filed on July 18, 1931.

On June 6, 1931, Margaret Coolidge, Mrs. W. L. Price and Nannie and her husband, for a cash consideration of $22,192.00, executed to the Salt Mount Oil Corporation a mineral deed conveying an undivided one-eighth interest "in the oil, gas and other minerals in and under and that may be produced from" said 440 acres of land. The instrument further provided that: "It is the intention of the parties to this mineral deed to cover all the land now covered by oil and gas leases by Humble Oil and Refining Company et al, * * * Said land being now under an oil and gas lease, executed in favor of Humble Oil and Refining Company et al, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-eighth (1/8) of all oil royalty and gas rental or royalty to be paid under the terms of said lease. It is understood and agreed that one-eighth (1/8) of the money rentals which may be paid to extend the terms within which a well may be begun under the terms of said lease is to be paid to said grantee * * *."

The lease in controversy was executed by Margaret Coolidge and her mother, Mrs. W. L. Price, at the latter's home on September 12, 1930. An agent of the Humble Company presented said lease to them to be executed. He told them that the purpose of the instrument was to correct the fieldnotes in the old lease (the lease made in 1928 by Mrs. Price as guardian for Margaret and William, and by Nannie and her husband), and to correct the guardianship proceedings involving the execution of that instrument. Both Margaret Coolidge and her mother were highly educated women at the time; both holding first grade teachers' certificates. Margaret Coolidge did not read the instrument, but according to the testimony of Mrs. Clark (formerly Margaret Coolidge) she left that task to her mother and relied on her mother to determine whether the instrument should be signed or not. She admitted that her mother read the instrument. It was admitted by Mrs. Clark that nobody tried to prevent her from reading the instrument, but that it

was lying open on the desk at the time she signed it, and there was nothing to prevent her from reading it. She further admitted that she knew that the new instrument was being made to correct defects in the old lease. She did not know, however, that under the law, the old lease, even if it were valid originally, would have terminated when she became twenty-one years of age.

■ The Court of Civil Appeals held, in effect, that the lease in controversy did not effect a conveyance, to the Humble Company, of the leasehold estate so far as the undivided interest of Margaret Coolidge in the land is concerned. That holding seems to be founded on the fact that the date borne by the instrument is the same as the date borne by the old lease of 1928. The holding of the court is clearly erroneous. The new instrument contains terms that, of themselves, are sufficient in law to effect a conveyance of the leasehold estate at the time the instrument was executed, regardless of the date of the instrument. The fact that the new instrument contains the same terms as those contained in the old instrument, which was void, does not alter the fact that such terms became and are now terms of the new instrument. This being the case, the new instrument, duly executed as it was, effected a transfer to the Humble Company of the leasehold estate in the undivided interest of Margaret Coolidge in the land, regardless of the fact that the prior instrument is and was void. Montgomery v. Hornberger, 16 Texas Civ. App., 28, 40 S. W., 628 (writ refused); Scales v. Johnson, 41 S. W., 828 (writ refused); Jackson v. Tonahill, 49 Texas Civ. App., 169, 108 S. W., 178 (writ refused); Mondragon v. Mondragon, 113 Texas, 404, 257 S. W., 215; Breitling v. Chester, 88 Texas, 586, 32 S. W., 527; Cannon v. Boutwell, 53 Texas, 626; Peak v. Brinson, 71 Texas, 316, 11 S. W., 269; Cross v. Everts, 28 Texas, 524; Cole v. Bammel, 62 Texas, 111.

In most of the cases cited above, there was involved an adoption, by ratification or confirmation, of the terms of a prior instrument that was void only as to the adopters, but there is no logical basis for a distinction between the legal effect of adopting the lawful terms of an instrument of that character and that of adopting the lawful terms of an instrument that is void as to everybody. In the first put case, the adopter makes valid as to himself that which was void; in the other case he can do no more. The theory, which is entertained by some

courts, to the effect that the lawful terms of a void instrument can not be made valid by adoption—or by what amounts to the same thing, ratification or confirmation—is rejected. This conclusion is reached from a study of decisions cited.

Where a valid instrument conveying land recites the date of the conveyance, the recital, in the absence of better evidence, may be accorded probative force with respect to the fact recited, but the recital never can acquire force to vary or destroy the conveyance effected by the instrument. In the present instance, the law regards the terms of the instrument in controversy as governing the rights of the parties to it. The date recited in the instrument, considered in the light of the extrinsic evidence, identifies the old instrument as a subject with respect to which the parties to the later instrument were acting, but that fact does not impart to the later instrument the vices of the other one.

■ With reference to the charge that Margaret Coolidge (now Mrs. Clark) was induced by fraud to execute the instrument which is under attack, the admissions of Mrs. Clark, made from the witness stand, show that no fraud was practiced and that she voluntarily signed the instrument without reading it, under such circumstances as to preclude her from being heard now to say that she did not understand the legal effect of its terms. Rogers v. Rogers, 15 S. W. (2d) 1037.

■ It is contended that the lease under attack terminated, so far as the undivided interest of Margaret Coolidge in the land was concerned, on April 25, 1931, because no rental was paid or tendered to her, or deposited to her credit in the bank, on or before that date, as contemplated by the terms of the lease. Granting for present purposes that this is so, that would not prevent a restoration of the lease. It must be remembered that on June 6, 1931, Margaret Coolidge, together with her mother and sister, executed to the Salt Mount Corporation, for a consideration of more than twenty thousand dollars, a mineral deed by which the grantors assigned to said company not only one-eighth of the oil, gas and other minerals that may be produced from the 440 acres of land, but also treated the lease in controversy as still subsisting, and assigned to the Salt Mount Corporation one-eighth of the oil and gas royalties and one-eighth of the annual rentals arising under said lease. This was a ratification of the lease and it was revived. Grissom v. Anderson, 125 Texas, 26, 79 S. W. (2d) 619.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Adopted by the Supreme Court November 20, 1935.