## MITCHELL et al. v. SIMMS et al.
### No. 1691—6199.

Commission of Appeals of Texas, Section A.
Oct. 4, 1933.

Monning & Akin, of Amarillo, for plaintiffs in error.

Underwood, Johnson, Dooley & Simpson and Kimbrough & Boyce, all of Amarillo, and J. Sid O'Keefe, of Panhandle, for defendants in error.

HARVEY, Presiding Judge.

This suit was brought by the plaintiffs in error, Bill Mitchell and John Doucas, to remove cloud from their title to an oil and gas leasehold estate in 40 acres of land in Carson county, and to establish, as still subsisting, so far as said 40 acres are concerned, a certain oil and gas lease executed by W. F. Simms and wife to J. D. McGrath, and by the latter assigned, so far as it applies to the said 40 acres, to Mitchell and Doucas. The suit was commenced on May 17, 1930, and Simms and his wife, and various other parties holding an interest in said land, were made parties defendant. The case was tried in April, 1931, without a jury, and on the 25th day of that month the trial court gave judgment in favor of Mitchell and Doucas. In some respects the decretal provisions of the judgment of the trial court are more or less obscure and confusing, but for present purposes it is sufficient to say that in substantial respects the judgment is in favor of Mitchell and Doucas. A number of the defendants prosecuted an appeal, and the Court of Civil Appeals reversed the trial court's judgment and rendered judgment for them. Mitchell and Doucas have been granted the writ of error, and the case is now before us for review.

The material facts are substantially as follows:

On June 1, 1926, the defendants in error, W. F. Simms and wife, executed an oil and gas lease on a tract of 320 acres of land (being the south half of section 11, I. & G. N. Ry. Co. survey) in Carson county to J. D. McGrath. The lease was promptly recorded. Under the terms of the lease, McGrath had the right to assign any portion of the leasehold, and on August 15, 1927, duly assigned to the plaintiffs in error, Bill Mitchell and John Doucas, all his rights under the lease so far as same applies to a specific 40 acres of the 320-acre tract. In other words, with respect to this 40-acre tract, Mitchell and Doucas became the holders of the McGrath lease. The question at issue in this suit is whether or not the lease, as to said 40 acres, still subsists in all respects as it did originally. The question involves the payment of rentals provided by the lease, in lieu of drilling operations. The McGrath lease was for the term of ten years, and so long thereafter as oil or gas was produced from the land, the lessors, in effect, reserving a one-eighth interest in the oil and gas in place. The lease is in the usual commercial form, and vested in McGrath a determinable fee in seven-eighths of the oil and gas in place, and provided for the payment of royalties, etc. Among the provisions of the lease were the following:

"If no well be commenced on said land on

or before the 1st day of June, 1927, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the Panhandle Bank at Panhandle, Texas, or its successors, which shall continue as the depository regardless of change in the ownership of said land, the sum of $1.00 per acre, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payment or tenders, the commencement of a well may be further deferred for a like period of the same number of months successively. * * *

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee. * * *

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof, and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assigns of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rentals."

On July 9, 1926, Simms and wife duly conveyed to one J. P. Leslie "one-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from [describing the east half of the 320-acre tract covered by the McGrath lease]." The instrument of conveyance to Leslie further provided that: "The above described lands being now under lease originally executed to J. D. McGrath and now held by J. D. McGrath, it is understood and agreed that this sale is made subject to said lease, but covers and includes ½ of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease. It is agreed and understood that ½ of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said J. P. Leslie, and in the event the above described lease for any reason becomes cancelled or forfeited, then and in that event the lease interest and all future rentals on said land for oil and gas and mineral privileges, shall be owned jointly by W. F. Simms and J. P. Leslie, each owning a ½ interest in all oil, gas and other minerals in and upon said land, together with a ½ interest in all future rents." On the same day, July 9, 1926, Simms and wife executed another instrument conveying to J. P. Leslie "one-half interest in all the gas, oil and other minerals in and under and that may be produced from" the west half of said 320-acre tract. Excepting the description of the tract of land covered by the instrument, the wording of this instrument is the same as the one last described. Both of these instruments were promptly recorded.

Later, during the year 1926, Leslie executed instruments of conveyance to various persons other than Simms and wife, which persons are included among the defendants in error in this case. By each of these instruments Leslie conveyed to the grantee "one half interest in all the oil, gas and other minerals in and under and that may be produced from" a designated portion of the 320-acre tract covered by the McGrath lease. The portions of the said 320 acres which are designated and described in the above instruments embrace the 40 acres in controversy. All said conveyances by Leslie were in terms made subject to the McGrath lease, and collectively included all oil and gas royalties and rentals due, and to become due, under the McGrath lease. All said instruments were promptly put of record. The defendants in error to whom the conveyances were made, as well as those of the defendants in error who hold under them, will be designated in this opinion as "The Leslie Assignees." Still other defendants in error, during the first half of the year 1930, received from Simms and wife conveyances of some interest in the 40 acres in controversy, but, as will later appear, those conveyances occurred while the McGrath lease, as regards said 40 acres, was in force as to Simms and wife, and do not affect the rights of Mitchell and Doucas under said lease. Consequently the last-mentioned conveyances by Simms and wife need not be further noticed.

It is conceded by all parties that no well has ever been commenced as provided in the McGrath lease, but that annual rentals, as prescribed in the lease, were paid for each twelve-month period up to and including June 1, 1928. During the twelve-month period ending June 1, 1929, the prescribed annual rental for the 40-acre tract was not paid or tendered by Mitchell and Doucas, or by any one else. It is an admitted fact that this last-mentioned rental sum was not paid or tendered by Mitchell and Doucas until December, 1929. The trial court found that in said month of December Mitchell and Doucas paid to Simms the sum of $40 to cover the

annual rental that accrued June 1, 1929, and that Simms accepted the payment and used the money. It is not shown that any of the Leslie assignees participated in any way in this payment transaction.[1] The chief question to be decided goes to the status of the McGrath lease, as regards the 40-acre tract, in December, 1929, before the last-mentioned rental sum was paid to Simms, and its status after that event occurred. The right of Mitchell and Doucas to have made such payment, on or before June 1, 1929, and thereby extend for the period of twelve months the term within which the drilling of a well was to be commenced, is not questioned. The controversy goes to the effect of the payment that was made in December—some six months after the payment was due.

█ The effect of such payment in December, on the rights of the Leslie assignees, and the nature of the rights in the 40-acre tract, which they had at that time, will first be determined. The two instruments executed ·by Simms and wife to J. P. Leslie, on July 9, 1926, had effect, among other things, to transfer to the latter, subject to the McGrath lease, one half interest in the minerals in place under the 320 acres of land. Hoffman v. Magnolia Petroleum Co. (Tex. Com. App.) 273 S. W. 828. When Mitchell and Doucas failed to pay, on or before June 1, 1929, the prescribed amount of rental for the extension of the period for a well to be commenced as provided in the McGrath lease, the lease, in so far as the 40-acre tract in question was concerned, came to an end. All rights of Mitchell and Doucas under the lease contract ceased to exist, and the leasehold estate in said 40 acres was extinguished. Thus the Leslie assignees in December, 1929, stood vested with fee-simple title to a full undivided half of the minerals in place under said land, freed of all claims of Mitchell and Doucas under the McGrath lease. Humble Oil & Refining Co. v. Davis (Tex. Com. App.) 296 S. W. 285; Waggoner Estate v. Sigler, 118 Tex. 509, 19 S.W.(2d) 27. The lease contract having ended as to the 40 acres, none of its provisions was capable of affording the right or authority to Mitchell and Doucas to bind the Leslie assignees by making rental payments to Simms. The payment of the rental sum to Simms in December did not affect the title of the Leslie assignees to one-half the minerals in place under the 40-acre tract.

██ As regards Simms and wife, a different situation arose when the rental payment was made in December, 1929, and was accepted by Simms. The acceptance by Simms of that payment operates to estop him from claiming that the lease had terminated before the payment was made. No homestead rights of Mrs. Simms are shown to be involved, and the property covered by the McGrath lease was presumptively community property

of herself and her husband, consequently the estoppel which arose against the latter binds her. As regards the 40-acre tract, the McGrath lease was enforceable against Simms and his wife, after the December payment was accepted by Simms. The practical result of the estoppel which arose in December is the same as if Simms and wife had, by binding agreement in December, revived the lease. In neither instance would the rights and interests of the Leslie assignees in the land ·be affected. In a word, as against Simms and his wife, the lease, after the payment of rental was made in December, 1929, was in force, but not as against the Leslie assignees.

██ It does not appear in evidence that the rental payment that accrued June 1, 1930 (some ten months before this case was tried), has been paid, but, even if same has not been paid or tendered, that would not affect the subsistence of the lease as against Simms and wife and those claiming rights in the land under the conveyances made by Simms and wife since December, 1929. The reason for this is that in March, 1930, while the lease still was in force as to Simms and wife, Simms repudiated said lease as being no longer in force, and denied all rights of Mitchell and Doucas thereunder, on account of the failure of the latter to pay on or before June 1, 1929, the rental sum hereinabove discussed. The declaration of this repudiation and denial was in the form of an affidavit to that effect, which Simms executed and caused to be put of record in the deed records of Carson county. As already shown, this suit was brought by Mitchell and Doucas on May 17, 1930, and Simms and wife undertook to contest the lease, and still undertake to contest same, on the asserted ground that same terminated in June, 1929, and therefore is no longer in force. In these circumstances, equity will not permit the lease, as it concerns Simms and wife, to lapse for nonpayment of rentals as they accrue pending the controversy. Mr. Thuss, in his valuable treatise on "Texas Oil and Gas," at page 90, says: "If the lessor has declared he will not receive the rental when due, or has notified the depository not to accept the rental, or has by any other acts evidenced a repudiation of the contract, the tender of the rentals will not be required. Under such circumstances as above mentioned, it would be a useless act to require the lessee to go through the formality of making a tender of rental where it is known before such tender of rentals that they would not be received."

In the main, this doctrine receives our approval. We hold, however, that it was incumbent upon Mitchell and Doucas either to prove that the prescribed rentals which became due before the trial of the case and after the controversy arose were deposited

in the bank, as provided in the lease, or to offer in their pleadings to pay into the registry of the court such rentals as the court properly finds ought to be paid as a prerequisite to the relief sought. Having failed to do either, Mitchell and Doucas were not in a position to assert as against any of the defendants in error that the lease remained subsisting at the time the case was tried in April, 1931. For this reason the judgment of the trial court cannot properly be affirmed even as to Simms and wife.

For the reasons given we recommend that the judgment of the Court of Civil Appeals be set aside and that as to all the defendants in error the judgment of the trial court be reversed and the cause remanded. We further recommend that all costs incurred herein in the Court of Civil Appeals be taxed against the plaintiffs in error, Bill Mitchell and John Doucas, and that all costs incurred in the Supreme Court be taxed against the defendants in error.

CURETON, Chief Justice.

Judgments of the Court of Civil Appeals and district court are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.