L. B. HAMILTON, JR., v. G. W. BAKER ER UX.

No. A-1747. Decided October 27, 1948.
Rehearing overruled November 24, 1948.
(214 S. W., 2d Series, 460.)

*Stine, Bunting & Stine* and *Vincent Stine,* all of Henrietta, for petitioners.

The Court of Civil Appeals erred in holding that the lease had terminated, when the agreed case showed that if the plaintiffs had presented the renewal check for payment within a reasonable time that it would have been paid. Southland Life Ins. Co. v. Greenwade, 138 Texas 450, 159 S. W. (2d) 854; Pink Front Bankrupt Store v. G. A. Mistrot & Co., 90 S. W. 75; Dorchester v. Merchants Natl. Bank, 106 Texas 201, 163 S. W. 5.

*T. H. Yarbrough* and *Joe. H. Cleveland,* of Bowie, for respondents.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

G. W. Baker and his wife made an oil and gas lease on their 230-acre Montague County farm August 12, 1944, for a primary term of ten years. The lease contained this provision:

"If no well be commenced on said land on or before the 12th day of August, 1945, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to

lessor, or to the lessor's credit in the First National Bank at Saint Jo, Texas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of Two Hundred Thirty and No/100 Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like period of the same number of months successively."

No well was commenced on the land. A delay rental of $230.00 was paid the lessors before August 12, 1945. In the meantime L. B. Hamilton, Jr., of Houston, had succeeded by assignment to the ownereship of the lease, in which Sam R. Mays, of Wichita County, Hamilton's agent, had a contingent interest. About 11 o'clock on the night of August 12, 1946, Mays went to the Baker home about six miles out of St. Jo, Montague County, disclosed that he had an interest in the lease, and gave Baker his check on the City National Bank of Wichita Falls (which will sometimes be referred to as "City National") for $230.00 as delay rental for the lease year beginning that day. Baker kept the check until September 17, 1946, when he deposited it to his credit in the First National Bank of St. Jo. The check reached the City National September 20, 1946, which refused payment because Mays had insufficient funds on deposit to pay it. The check was returned to the St. Jo bank, which mailed it to Baker on September 23, 1946, after having charged it back to his account. The Bakers claimed that the lease terminated because of failure to make timely payment of the delay rentals and sued to have it so decreed. The district court denied a recovery. Its order was reversed and judgment rendered for the Bakers by a divided court in the Court of Civil Appeals. 210 S. W. (2d) 634. The majority of that court fell into error in declining to affirm the trial court's judgment.

The facts were stipulated. It appears that Mays' account at the City National was small but active. With the exception of four days, from the time he gave the check until the day it was presented for payment Mays had on deposit sufficient funds to pay the Baker check. But before the account ever fell below $230.00, Luther Thurman, an officer of the City National, agreed with Mays that if the Baker check was presented at any time when Mays' account was under $230.00, the bank would nevertheless pay it. Thurman pencilled a notation to that effect on Mays' sheet in the bank's individual depositor's ledger. Entries filled up this sheet August 29, 1946, and a new one was

inserted which failed to carry Thurman's notation. That officer was absent from the bank on September 20, 1946, when the check in question was finally presented and payment refused. He got back three days later and, finding that the check had been returned unpaid, telephoned an officer of the St. Jo bank that a mistake had been made and that the check would be paid when presented. But the check had already been mailed back to Baker. The latter went to the St. Jo Bank the next day, was told what the City National official had said, but never again presented the check for payment. He mailed it back to Mays some eight months later.

While Baker still had the check Mays went to see him about it three times, and on one of those occasions took along sufficient currency to pay the rentals. Baker, it was stipulated, claimed that the lease had terminated by its own provisions and so would not have accepted the money to cover the check at any time.

The general rule regarding failure to pay delay rentals under a lease containing a clause like that quoted at the outset is that "where the 'unless' drilling clause is used a failure of the lessee to drill or pay a stipulated sum of money ipso facto tereminates the lease without necessity of re-entry, action or their equivalents by the lessor." 2 Summers, Law of Oil and Gas (Permanent Ed.) sec. 452, at p. 497; W. T. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S. W. (2d) 27; Humble Oil & Refining Co. v. Harrison, 146 Texas 216, 205 S. W. (2d) 355. In the latter decision it was correctly observed, however, that a strict and rigorous application of this rule has been relaxed in some cases. Perkins v. Magnolia Petroleum Co., Tex. Civ. App., 148 S. W. (2d) 266, writ dismissed, judgment correct; Miller v. Hodges, Tex. Com. App., 260 S. W. 168; Mitchell v. Simms, Tex. Com. App., 63 S. W. (2d) 371. Those cases mainly involve situations where equitable considerations would render it manifestly unjust to declare the lease at an end in consequence of a failure to make timely payments of delay rentals technically and exactly as stipulated in the lease contract.

But it does not become necessary in this case to resort to equitable considerations and reasoning to conclude with certainty that the Baker lease did not terminate. This for the reason that the rentals in dispute were paid by the timely delivery and acceptance of a check which was in fact good, and accordingly the lease was effectively continued in force. Looking to the substance rather than the form of the transactions be-

tween the parties, the check was in fact a good one at all times from the opening of the drawee bank the morining after its delivery until it was mailed back to Mays some eight months later. Quite accidentally the check did reach the drawee bank at a time when Mays' balance was too low to cover it and the notation of the arrangement between Mays and the bank was not on Mays' ledger sheet. To add to these mishaps, the officer who agreed with Mays to pay the check was temporarily absent. These fortuitous events did not at all render the check a worthless one. To the contrary, it was in fact good. Merely by the veriest of mistakes was it returned unpaid. If Mays had had ample funds on deposit to cover the check and by error some bank employee had returned it unpaid, giving as a reason that the drawer had insufficient funds to cover it, none would contend that the check was not in fact good. Such a mistake as that would not result in a termination of the lease. Now, Mays had a valid commitment from the bank to pay the check upon presentation, and so had sufficient funds available at the drawee bank to pay it when presented. The conclusion is inescapable, under all these circumstances, that there was in legal contemplation no failure to pay or tender the delay rentals seasonably, and the lease was accordingly saved for an additional year.

Prompt tender was made under the lease terms of the rentals falling due August 12, 1947. Also, tender was made into the registry of the court of the correct amount of delay rentals due by the owners of the lease up to the time of the trial. It follows that on the date of the entry of the district court's judgment in favor of the lessee this lease was, as that court held, in full force.

The judgment of the Court of Civil Appeals is reversed and that of the district court affirmed.

Opinion delivered October 27, 1948.

Motion for rehearing overruled November 24, 1948.