George H. TRACY et al., Appellants,

v.

LION OIL COMPANY et al., Appellees.

No. 3360.

Court of Civil Appeals of Texas.

Eastland.

April 11, 1958.

Rehearing Denied May 2, 1958.

Wynne & Wynne, Wills Point, Carleton P. Webb, Post, for appellants.

Richard S. Brooks, Whitaker & Brooks, Stubbeman, McRae, Sealy & Laughlin, Midland, Frank L. Heard, Jr., Houston, for appellees.

GRISSOM, Chief Justice.

George H. Tracy and H. H. Tracy sued Lion Oil Company, Humble Oil & Refining

Company and Charles Lindsey Marchbanks in trespass to try title to an interest in an oil and gas leasehold estate and for specific performance of an alleged contract by Lion to reconvey to the Tracys three-fourths of the leasehold estate in a tract of land in Scurry County. Since some of the Tracys' pleadings and contentions are difficult to understand they will be stated in some detail. They first alleged that they owned an oil and gas lease on a one-fourth interest and a one-sixteenth of seven-eighths overriding royalty on the remaining three-fourths of the leasehold estate. (It is undisputed that the Tracys own the leasehold above 4,000 feet and a one-sixteenth of seven-eighths overriding royalty on three-fourths of the leasehold estate below 4,000 feet. Therefore, this will hereafter be assumed and not repeated.) In the next paragraph they alleged they owned all the leasehold below 4,000 feet; that Lion owned the lease on three-fourths thereof but that Humble and Charles Lindsey Marchbanks did not own any interest. They alleged that on December 28, 1948, they made a contract with Lion for the sale of two oil and gas leases and assigned them to Lion; that Lion approved the title to and paid for a three-fourths interest but did not approve the title to nor pay for the remaining one-fourth; that Lion pretended to work with them in clearing the title to said one-fourth interest but that it did not act in good faith; that Lion had agreed, after it had approved the title to and paid for a one-fourth interest, to either accept and pay for all the remaining three-fourths interest or reconvey it to the Tracys; that Lion accepted the title to and paid for a three-fourths interest but did not approve the title to nor pay for the remaining one-fourth and, therefore, Lion had the duty to reconvey a three-fourths interest. Wherefore, they prayed that the court compel Lion to reconvey said three-fourths interest. In a trial to the court judgment was rendered for all the defendants, except Tracys' undisputed interest heretofore mentioned, and the Tracys have appealed.

The case grew out of the following situation. In 1943 R. Bishop, who is the common source of title, owned the land and conveyed it to R. P. Marchbanks, excepting one-half of the minerals but granting Marchbanks, his heirs and assigns, the right to lease the excepted minerals. Marchbanks died on December 7, 1946. He was survived by his wife and by two sons, Lindsey A. and Robert Marchbanks. He devised his property to his wife, Maggie Marchbanks, for life, then to said two sons for their lives and at their deaths to a grandson, Charles Lindsey Marchbanks, in fee. Lindsey A. Marchbanks was appointed independent executor. On January 6, 1947, R. P. Marchbanks' will was probated and Lindsey Marchbanks qualified as independent executor. At his death R. P. Marchbanks and wife owed the Federal Land Bank approximately $959.07, which was secured by a vendor's lien. The land was not then leased and no oil had been produced thereon.

It is undisputed that R. P. Marchbanks and wife owned as community property one-half of the minerals and had the right to lease the half retained by Bishops; that, after the death of her husband, Mrs. Marchbanks had the power to lease her one-fourth of the minerals, subject to the payment of debts and the rights of the independent executor; that the will of R. P. Marchbanks purported to devise only his one-fourth of the minerals and the minor was devised the fee to said one-fourth subject to said life estates.

C. U. Bishop and wife executed a lease to Cannon Drilling Company, dated December 24, 1946, which was filed for record on June 13, 1947. On June 14, 1947, it was assigned to the Tracys, who on December 16, 1948, assigned it to Lion. About June 13, 1947, the surviving wife and sons of R. P. Marchbanks delivered a mineral lease to Cannon Drilling Company "on our undivided ½ interest" in said land. It was dated December 24, 1946. This lease recited that C. U. Bishop was then the owner of the other half of the minerals and

had by a separate instrument leased same. This lease was assigned by Cannon to the Tracys on June 14, 1947, and assigned by the Tracys to Lion on December 16, 1948. In March, 1949, Mrs. Marchbanks and Lindsey Marchbanks, as independent executor, delivered to George Tracy a lease on the land in question. It was not recorded when Humble purchased the lease at the guardian's sale. By assignment dated March 3, 1949, said lease to Tracy was transferred to Lion with Tracy excepting one-sixteenth of seven-eighths of the oil produced thereon. In March, 1949, Maggie Marchbanks and Lindsey A. Marchbanks, as independent executor, delivered to the Tracys and Lion a ratification of the lease by Maggie, Lindsey and Robert Marchbanks to Cannon, stating therein that they ratified same "but as if there had been no specification in said lease of the interest covered thereby and as if there had been no reference therein to the existence of any other oil and gas lease  *  *  *."

·Lindsey Marchbanks filed an application in the probate court to be appointed guardian of the estate of the minor, Charles Lindsey Marchbanks. He was appointed, qualified and filed an inventory and appraisement of said minor's estate on July 20, 1948, listing said one-fourth interest as the property of the minor then in his possession. Thereafter, said guardian was authorized to execute a lease on said minor's interest to Humble. In accord with the orders of the probate court, on March 11, 1949, the guardian executed a lease on said minor's "vested remainder in an undivided ¼th of the oil, gas and other minerals" to Humble for a large consideration.

On December 28, 1948, an agreement was executed by Lion and the Tracys, evidenced by a letter, in which it was recited that the Tracys had assigned to Lion the lease from the Bishops to Cannon and the lease from Maggie, Lindsey and Robert Marchbanks to Cannon, reserving, however, to the Tracys the leasehold estate down to and including 4,000 feet and an overriding royalty of one-sixteenth of sev-

en-eighths of the minerals produced from below 4,000 feet. It recited that Lion had then approved title to only a one-fourth interest and had paid the Tracys $16.50 per acre and that the Tracys' assignments to Lion "purported" to convey the "full" interest in said leases. It was agreed that the Tracys would continue their efforts for one year and at their expense to make title acceptable to Lion to the remaining three-fourths and deliver to Lion such additional instruments as might be necessary to vest title in Lion to said interest. The remainder of said contract that may be here material is as follows:

"2. If at any time within one year from this date you are able to make title acceptable to us to the leasehold estate in that ¾ of the minerals not yet approved by our attorneys, then upon our acceptance of title we agree to pay you for the additional ¾ leasehold interest at the rate of $16.50 per net leasehold acre, being the same basis upon which payment for ¼ leasehold interest has already been made to you." (The lease to Humble was made within said one year period.)

"3. If at the end of one year you have not made title acceptable to us to the leasehold estate in that ¾ of the minerals mentioned above, we shall have the right as we may then determine· (a) to reassign and relinquish to you the leasehold acreage hereinabove described except insofar as the leases above cover that ¼ of the minerals which has been approved by our attorneys and for which we have made payment to you, or (b) to take over in our own right the matter of curing title and securing a lease upon that ¾ of the minerals, title to which is presently unsatisfied; if we make the latter decision we shall have an additional year within which to endeavor to perfect the title and secure leases adequate to cover the particular ¾ of the minerals. If we proceed, under subdivision (b) of this section, to make

efforts to cure the title any expense incurred in so doing shall be borne wholly by us.

"4. In the contingency that after you have spent one year in endeavoring to perfect title to the leasehold estate in the ¾ of the minerals mentioned above and have been unsuccessful and if we have elected to take an additional year for such curative effort on our part, then in the event that we are unable to perfect leasehold title to that ¾ of the minerals, title to which is presently unsatisfied, then upon completion of our efforts and the securing of such leases and other instruments as are adequate to vest in us leasehold title to that particular ¾ of the minerals, we agree to make payment to you for the additional ¾ leasehold interest at the same rate of $16.50 per acre hereinabove mentioned. If at the end of this company's efforts to perfect title during the second year we are unable to do so, then at the end of that year we agree to reassign and relinquish to you the leases the acreage hereinabove described except to the extent of the ¼ interest title to which has been approved and for which we have made payment to you.

"5. Notwithstanding any provision hereof indicating to the contrary, if, during the curative periods above allotted each of us, you or we should perfect title to an interest in addition to the ¼ leasehold interest now approved and paid for, we shall, upon delivery to us of such instruments as our attorneys require, make payment to you for such additional leasehold interest at the rate of $16.50 per net lease acre and in such event our respective covenants above relative to ¾ interest will necessarily apply to that fractional portion of the leasehold title still remaining unapproved and for which payment has not then been made to you."

■ The court filed findings of fact and conclusions of law, including findings that the Tracys, Lion and others agreed upon what was to be done to perfect title so that all the Marchbanks' minerals could be leased; that at a meeting of said parties on January 8, 1949, they agreed to institute suit in the District Court to have the will of R. P. Marchbanks construed and have determined the title to the mineral estate devised and who, if anyone, had authority to lease the same and to obtain from the probate court authority for the guardian to execute a lease conveying the minor's interest; that Lion paid the Tracys $3,052.50 in accord with their letter agreement of December 28, 1948, for a one-half interest in the minerals (which was in addition to the one-fourth interest, title to which had been previously accepted and which had been paid for by Lion); that the Tracys and Lion then both believed that the Tracys had actually conveyed to Lion only a three-fourths interest and that Lion was paying for such interest and that at that time the Tracys represented to Lion that they had received from Lion $16.50 per acre for a three-fourths interest in the leasehold and agreed to continue their efforts to make title acceptable to Lion to the remaining one-fourth.

The court found that, pursuant to said letter agreement and the agreement of January 8, 1949, as to how they would proceed to clear title to the remaining one-fourth, on January 31, 1949, suit was filed for all of said parties in the name of Maggie and Robert Marchbanks against Lindsey Marchbanks et al. in the District Court of Scurry County to construe the will and have determined the title to said minerals and who had authority to lease the same; that, in March, 1949, said case was tried and George Tracy, Lindsey Marchbanks, representatives of Lion and said minor were present and participated in the trial and the court signed the judgment and delivered it to the Clerk of the District Court of Scurry County. The court found that the Tracys and Lion were interested in, initiated, identified themselves with and participated in said litigation in which the

matters aforesaid were determined; that, pursuant to said plans and agreements, they caused the guardian to file an application for authority to lease said minor's "vested remainder in an undivided one-fourth (¼th) of the * * * minerals"; that said application recited that the minor owned said interest in fee simple and that a lease should be executed for the minor in order to create a complete leasehold estate; that George Tracy, representing himself and H. H. Tracy, and Lion agreed to bid in the name of Lion at the sale of the guardian's lease, for their joint benefit; that at the hearing of said application George Tracy and representatives of Lion were present and they attended the guardian's sale and bid for their mutual benefit in the name of Lion; that the lease was sold to Humble, the highest bidder; that immediately prior to the acceptance of Humble's bid, Lion's representative conferred with George Tracy, told him that Lion would make no further joint bid and tendered Tracy the opportunity to continue the bidding, which he declined. The court found that the Tracys and Lion were interested in, initiated and participated in the guardianship proceedings which resulted in the guardian's lease to Humble; that they invoked the jurisdiction of the probate court and took the position therein that said minor had a vested remainder in an undivided one-fourth of the minerals available for leasing and that the Tracys and Lion did not have a lease on the minor's interest, which position is inconsistent with the Tracys' position in this case. The court found that after said hearing, acting under the order of the probate court, the guardian executed a lease to Humble on the minor's vested remainder in an undivided one-fourth of the minerals; that, in accord with the letter agreement and later plans, an application was filed in said guardianship to authorize the guardian to ratify the leases from Maggie, Lindsey and Robert Marchbanks to Cannon and from Mrs. Marchbanks and Lindsey Marchbanks, executor, to Lion and the Tracys. In said application it was represented to the probate court that said leases were originally intended to cover the entire mineral estate but that they were found not to include "the vested remainder interest of Charles Lindsey Marchbanks in an undivided ¼th of the mineral estate". The court found that the probate court authorized the ratification of said leases with the express provision that it should not include the vested remainder of the minor in the undivided one-fourth of the minerals leased to Humble; that, pursuant to said application and order, the guardian executed said ratification but specifically stated therein that it did "not cover the vested remainder of the ward in an undivided ¼th interest in the mineral estate * * * which was covered by and embraced in the lease executed by the Guardian to Humble." The court found that this instrument was received and accepted by the Tracys and Lion and recorded by them; that on April 8, 1949, the Tracys executed to E. E. Fogelson a royalty deed in which they stated, in effect, that they had assigned to Lion only a three-fourth's interest; that on October 16, 1951, George Tracy wrote Lion that they had delivered to it a three-fourth's interest in the Marchbanks' lease and that the other one-fourth had been awarded to Humble, and the Tracys asked to be released from any further obligation to Lion; that, throughout their trade and working together, until February 1, 1952, Lion and the Tracys believed and understood that Lion owned only a three-fourth's interest for which Lion had paid them $16.50 per acre; that the Tracys abandoned any equitable rights they had under the letter contract to a reconveyance of any part of the leasehold and that, shortly before February 20, 1952, the Tracys' attorney wrote Lion that it then owned three-fourths of the lease and Humble owned one-fourth.

The court found that Lion and Humble were jointly operating the leases under a contract providing for Humble's ownership of one-fourth and Lion's three-fourths; that the Tracys, knowing all the facts incident to their claim, did not ad-

vise Humble of their claim and for nearly five years Humble relied to its detriment on the Tracys' silence and their representations to the probate court and their position therein that the minor had a vested remainder in one-fourth of the minerals available for leasing and that the Tracys and Lion did not have a lease on that interest.

■ The court concluded as a matter of law that the Tracys had failed to prove title except to the admitted interest heretofore stated; that Humble had established its ownership of one-fourth of the leasehold and Lion had established its ownership of three-fourths. The court concluded that the judgment of the District Court was res adjudicata of the Tracys' claims; that the Tracys were estopped to assert that the probate court could not authorize the guardian's lease to Humble, to deny its validity or assert they had assigned more than a three-fourths interest to Lion and, further, that the Tracys had ratified the guardian's lease and confirmed Lion's ownership of a three-fourths interest. We sustain these conclusions and hold that the findings of fact on which they are based are sustained by the evidence.

■ It is undisputed that the Tracys purported to convey to Lion all of the leasehold but that Lion only approved the title to and paid for a three-fourths interest. The Tracys appear to contend that if Lion could have bought the one-fourth interest at the guardian's sale by outbidding Humble it had the duty to do so and, after paying the guardian, to also pay the Tracys for the same thing and give them an overriding royalty on said one-fourth. We do not so construe the contract. They seem to contend that, after Lion had approved the title to and paid for all the remaining three-fourths, Lion was required by said letter contract to reconvey all but the one-fourth interest first approved and paid for. In making this contention they ignore paragraph five which, we think, provides

that it had the right to keep any additional interest title to which was approved and for which it paid $16.50 per acre, with the Tracys retaining an override. We do not think it can be reasonably contended that Lion had a duty to reconvey any part of the leasehold estate title to which it approved and for which it paid the Tracys. Since it is undisputed that Lion approved the title to•and paid for a three-fourths interest, it cannot now be contended that Lion has the duty to reconvey three-fourths. In December, 1948, the Tracys were paid by Lion $1,526.25 for a one-fourth interest. On December 28, 1948, they executed the "letter contract". In February, 1949, they wrote Lion they had then conveyed to it a three-fourths interest in the leases and they then obtained from Lion an additional $3,052.50. If the Tracys intend to assert a duty under the letter contract to reconvey the minor's one-fourth interest purportedly conveyed by the guardian to Humble it is despite the fact that Lion would have had to outbid Humble, pay the minor more than $50,-000 for his interest and also pay the Tracys for such interest and give them an override. It is undisputed that Lion did not approve the title to this one-fourth. If the Tracys acquired such an interest it was by virtue of the lease executed by the independent executor. The Tracys do not claim that the minor has executed a conveyance or done anything which entitles them to a lease on the interest devised to him. They say they are entitled to such an interest by virtue of leases executed by Maggie Marchbanks, the surviving wife, or by Lindsey Marchbanks, as independent executor.

■ Mrs. Marchbanks did not have authority as community survivor to lease the minor's interest. Her husband left a will appointing Lindsey Marchbanks independent executor of his estate. The will was probated and he qualified as independent executor before Mrs. Marchbanks executed a lease. Therefore, she had no authority to lease the minor's interest. The exclu-

sive right to administer said estate belonged to the independent executor. Lovejoy v. Cockrell, Tex.Com.App., 63 S.W.2d 1009, 1010; Huston v. Cole, Tex.Com.App., 139 Tex. 150, 162 S.W.2d 404, 406; Green v. Green, Tex.Civ.App., 244 S.W. 589; Hollingsworth v. Davis, 62 Tex. 438, 440; Matula v. Freytag, 101 Tex. 357, 107 S.W. 536. Appellants' contention that they acquired said title from Mrs. Marchbanks, as community survivor, must be overruled. For reasons hereafter stated, it is not necessary to determine whether the independent executor could have leased the mineral devised to the minor.

We have concluded that the Tracys cannot now say that they conveyed the minor's interest to Lion or that it was not conveyed by the guardian to Humble. There was evidence that George Tracy, acting for himself and H. H. Tracy, representatives of Lion and others met in the office of Lion's attorney on January 8, 1949, for the purpose of devising means of perfecting title to said one-fourth of the minerals; that the whole problem was discussed and they decided to file suit in the district court to have the will construed and have it judicially determined whether the minerals devised could be leased and who, if anyone, had authority to execute leases and to obtain a lease on the minor's interest through the probate court; that, in accord with their agreement, suit was filed and the district court held that the will did not prohibit leasing but that the minor's interest could only be leased by his guardian acting under orders of the probate court. There was evidence that a part of the plan agreed upon was to cause a lease of the minor's interest to be sold by a guardian acting under orders of the probate court. The probate court authorized a sale by the guardian to the highest bidder. There was evidence that it was agreed between the Tracys and Lion that they would bid in the name of Lion for their mutual benefit; that during the sale Lion and the Tracys concluded they had bid enough and were outbid by Humble. If the Tracys were vir-

tual parties to said suits, in the application to lease they represented to the probate court that it was necessary that the guardian execute a lease for the minor "in order to create a complete leasehold estate" and that the minor's interest was a "vested remainder in an undivided ¼ of the oil, gas and other minerals" then in the possession of said guardian. There is evidence that during all the planning, suing and bidding, done for the purpose of acquiring a valid lease on the minor's interest, the Tracys never asserted that they had delivered title to Lion to more than a three-fourths interest or that the guardian could not lease the minor's interest and, further, that the Tracys then had their own lawyers, on whose advice they relied.

On April 18, 1949, the Tracys assigned an overriding royalty interest to Fogelson in which they said they had assigned the lease by Maggie, Lindsey and Robert Marchbanks, the lease by the Bishops to Cannon and the lease by Mrs. Marchbanks, and Lindsey Marchbanks, as executor, which leases had been ratified and "that the said leases and ratification taken together cover and embrace an undivided three-fourth's interest in the oil, gas and mineral estate in said lands * * *."

In March, 1949, Lindsey Marchbanks, as guardian of said minor, in conformity with an order of the probate court obtained by the Tracys, Lion and others, executed a ratification of the Marchbanks' leases which recited that:

"* * * this instrument specifically does not cover the vested remainder of the ward in an undivided ¼ interest in the mineral estate in the lands above described, which remainder interest is covered by and embraced in a recent lease executed by the Guardian to Humble Oil & Refining Company and this instrument shall never be construed or interpreted as in any way conflicting with or casting a cloud upon the said lease of Humble Oil & Refining Company."

The court found that the Tracys and Lion received and accepted said instrument and had it recorded. See Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 583, 136 A.L.R. 626, and Loeffler v. King, 149 Tex. 626, 236 S.W.2d 772, 774.

■ There is evidence that said suits were brought in furtherance of the Tracy-Lion letter contract of December 28, 1948, and their later agreement and plans of January 8, 1949, to perfect title to the one-fourth of the minerals, which Lion had not approved nor paid for, so that it could be leased. We sustain the conclusion that the Tracys were virtual parties to and bound by said judgment. American Indemnity Co. v. Fellbaum, 114 Tex. 127, 263 S.W. 908, 910, 37 A.L.R. 633; Pelton v. Trico Oil Co., Tex.Civ.App., 167 S.W.2d 625, 628; Ex parte Foster, 144 Tex. 65, 188 S.W.2d 382, 384; Mims v. Hearon, Tex. Civ.App., 248 S.W.2d 754, 757. We conclude that said judgment is res adjudicata of the claims of the Tracys that the guardian's lease to Humble did not convey one-fourth or that Lion was bound to reconvey said one-fourth. The Tracys had been paid for three-fourths and had agreed to continue to exert their best efforts, in accord with the advice and assistance of Lion, to make title acceptable to Lion to the remaining one-fourth interest. They joined Lion and the minor in their plans for trials in the district and probate courts; they obtained a judgment of the district court that the minor's interest could be leased only by his guardian acting under the order of the probate court; they obtained a judgment of the probate court authorizing a lease of said one-fourth interest to the highest bidder and they, through Lion, bid at that sale. The district court's judgment was not void because it was not signed in the district court room in Scurry County and it cannot here be collaterally attacked. Bridgman v. Moore, 143 Tex. 250, 183 S.W.2d 705, 708; Hannon v. Henson, Tex.Com.App., 15 S.W.2d 579, 584. Though not named parties, they planned said suits for their own benefit,

helped prepare them, attended the trials and the guardian's sale, and, through Lion, bid for the minor's interest. They, in effect, represented to the court and other bidders that Lion and the Tracys did not have a valid lease on the minor's interest, and that the guardian could execute a valid lease thereon. The judgments were as to them decrees that the minor's interest was not leased and could only be leased by the guardian. We conclude that the Tracys are estopped by their judicial representations to claim a lease on the minor's interest. Spence v. State National Bank, Tex.Com. App., 5 S.W.2d 754, 756; Chicago, R. I. & P. Ry. Co. v. Lopez, Tex.Civ.App., 209 S.W. 192, 195 (Writ Ref.); Allen v. Berkmeir, Tex.Civ.App., 216 S.W. 647 (Writ Ref.).

Humble had no knowledge of the Tracy-Lion letter agreement. After making the aforesaid representations to the court, the Tracys, who were present and bidding through Lion, did not advise other bidders that they had already bought what was then being offered for sale, or that, by virtue of an unrecorded lease from the executor, who was then offering, as guardian, to lease the same, that they had already bought said one-fourth and transferred it to Lion. In purchasing the lease Humble paid attorney's fees for which the Tracys may have been liable under their letter agreement. Such purchase was made within one year after the date of the Lion-Tracy letter contract. Efforts to cure the title were then to be paid for by the Tracys. After the guardian's lease was executed the Tracys remained silent and did not claim the minor's interest for nearly five years while Humble and Lion spent a vast sum developing the lease and paid a large amount to said minor. See Dalton v. Rust, 22 Tex. 133; Rancher v. Franks, Tex. Civ.App., 269 S.W.2d 926.

We sustain appellees' counter-points to the effect that the Tracys have ratified the guardian's lease to Humble and are estopped to assert they obtained a lease on that interest or that Lion has the duty to

reconvey it to them. As a part of the general plan agreed to by the Tracys, the guardian made the application to the probate court for authority to execute a lease on the minor's interest. This was in conformity with the judgment of the district court, the letter agreement and the plans of the Tracys, Lion and others agreed to about January 8, 1949. The probate court granted permission and approved the lease. Thereafter, in conformity with the order of the probate court and said agreements, the guardian executed a ratification of the Marchbanks' leases under which the Tracys now claim and expressly recognized the validity of Humble's lease. This was received, accepted and recorded by Lion and the Tracys. The court found that said ratification was procured by the Tracys and Lion and accepted and recorded by them. On April 18, 1949, the Tracys sold an overriding royalty interest to Fogelson, which overriding royalty was created by their assignments to Lion of the Marchbanks' leases. They stated in the conveyance to Fogelson that the leases they had assigned to Lion "taken together cover and grant an individed ¾th interest in the oil, gas and mineral estate—." On October 16, 1951, George Tracy wrote Lion that the Tracys had delivered to Lion "a ¾th interest in the Marchbanks' lease. The other ¼th interest in the Marchbanks' lease was awarded to Humble Oil and Refining Company, by court action in Big Spring." In February, 1952, the Tracys' attorney wrote Lion that according to information obtained from Mr. Tracy and others, Lion "now owns ¾th of the above lease and the Humble Oil & Refining Company owns an additional ¼th." On March 24, 1952, the same attorney wrote Lion that it was his information that no question had been raised as to the validity of the lease to Humble but that Lion could have acquired it by bidding higher than Humble. In 1951 the Tracys executed two division orders to Lion in which they stated that the leases assigned by them to Lion covered only a three-fourth's interest and that the Tracys'

overriding royalty interest was reduced proportionately. We think the record supports the court's conclusions that the Tracys have ratified the lease to Humble and that they are estopped to claim a lease on the minor's one-fourth interest or demand a reconveyance thereof from Lion. Loeffler v. King, supra; Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619; Van Deventer v. Gulf Production Co., Tex. Civ.App., 41 S.W.2d 1029 (Writ Ref.); Tex. & Pacific Coal & Oil Co. v. Kirtley, Tex.Civ.App., 288 S.W. 619 (Writ Ref.); Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582, 587; Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355.

The judgment is affirmed.