**G. B. HASTINGS et al., Appellants,**

**v.**

**John J. PICHINSON et al., Appellees.**

No. 14078.

Court of Civil Appeals of Texas.

San Antonio.

May 29, 1963.

Rehearing Denied July 10, 1963.

**2**

J. Hubert Lee, Frank L. Scofield, Austin, for appellants.

Ralph J. Graham, Corpus Christi, for appellees.

POPE, Justice.

Plaintiffs, John J. Pichinson and others, sued for and obtained a declaratory judgment that they own the gas under two leases. The question is whether the two leases have terminated as to gas, and if so whether they were revived. The jury answered all issues for the plaintiffs. We hold that plaintiffs, as a matter of law, own one lease, but lost the other.

The first lease was executed on February 9, 1958, by G. B. Hastings and wife, and was for oil and gas under 188.74 acres of Frio County land. At the time of trial there was a gas well on that tract. We shall call it the Hastings lease. On the same date G. B. Hastings and wife, Bennie Cary and wife, and Ethel Mackey and husband, executed another oil and gas lease to 273.4 acres of land out of the same survey as the Hastings lease. We shall call it the Hastings-Cary lease. There is no well on it. The Mackeys owned a one-fourth life estate in the 273.4 acre tract, and plaintiffs concede that their rights to the Mackey interest have lapsed. That is not here involved. Both leases were to Tower Production Company, and plaintiffs, John J. Pichinson and the others, are the assignees of its rights. Both leases provided that the leases would lapse in one year if there was no oil production. Plaintiffs claim no oil rights. Both leases provided for shut-in gas royalties, but that such royalties would not continue a lease beyond January 9, 1960. Both leases had these provisions:

"2. Subject to the other provisions herein contained, this lease shall be for a term of one (1) year from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land hereunder. It is expressly understood by and between the parties hereto, and each does hereby agree and so stipulate, that this Lease may not be extended beyond January 9, 1960, by the payment of shut in gas royalty on a gas well where gas is not being sold or marketed from the above premises as provided in Paragraph 3(b) hereinbelow. It is further agreed and herein provided that notwithstanding that gas may have been theretofore discovered on the above described premises and may or may not have been marketed on said premises prior to February 8, 1959, this Lease shall never the less terminate as to oil on February 8, 1959, unless prior to such time said Lessee shall have drilled an oil well on said premises which said well is at such time actually producing or capable of producing oil in paying quantities. It is the purpose and intent of the parties to provide that production·

of oil within the primary term of one (1) year shall continue this Lease in force and effect so long thereafter as oil is produced from said land, as provided hereinbefore, but production of gas or discovery of gas in paying quantities may continue this Lease in force and effect after the end of said primary term of One (1) Year only as to gas.

"3. The royalties to be paid by Lessee are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of Lessor into the pipe line to which the wells may be connected: Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase; (b) on gas including casing-head gas or other gaseous substance, produced from said land and sold or used off the premises or in the manufacture of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one eighth of the amount realized from such sale. Where gas from a gas well is not sold or used, Lessee may pay as royalty $300.00 per well per year, provided, however, that said $300.00 per well per year equals the annual rental called for in Paragraph 4, and if such payment is made it will be considered that gas is being produced within the meaning of Paragraph 2 hereof and * * *."

The leases were later corrected to provide that the lessee may pay $300 per month per well as shut-in gas royalty. A gas well was discovered on the Hastings 188.74 acre tract in May, 1958, but there were no line connections available. As permitted by the lease, shut-in royalty payments commenced. The two leases were pooled with a third tract on September 18, 1958, according to the jury finding, but the Gas Unit Designation was not filed for record until July 6, 1960. On October 1, 1958, the well capable of production was capped. The primary term expired in February, 1959, at which time lessees' rights as to oil terminated. The gas rights did not terminate at that time. On May 1, 1959, lessees made a contract with Coastal States Production Company under which it would commence the actual taking of gas on April 1, 1960, according to the jury finding. At that time it began taking gas. Shut-in royalty on gas was paid up to January 9, 1960. On March 16, 1960, lessees paid lessors what they called shut-in gas royalty and the lessors accepted it. This was tendered as payment for the February, 1960, shut-in gas. Lessees tendered another royalty check on May 28, 1960, for the March payment, but the lessors rejected it upon the grounds that the leases had terminated. An undisputed and unattacked fact of profound signficance is that on April 26, 1960, Hastings and wife executed a lease for oil only to C. G. Holcombe and N. Mabry, covering the 188.74 acre tract only. In that lease Hastings and wife recognized the then validity of the gas lease by this provision:

"All rights to the gas will be turned over to the rightful owners or lessees of the gas rights on this tract or lease as set out in gas lease only, lessees being at this time the Tower Production Company, a Texas Corporation, which hold the lease rights on gas only at this time."

On June 15, 1960, the Hastings and Carys contracted with Holcombe that he would institute a suit for the recovery of the mineral rights to both the 188 and 273 acre tracts of land, after which the Hastings and Carys agreed to convey the gas rights to Holcombe. He is a party defendant in this suit.

Plaintiff lessees, in support of the judgment that they own the gas rights notwithstanding the provision which prohibited shut-in payments after January 9, 1960, rely

upon these facts and findings: (1) Lessees tendered and lessors accepted shut-in royalty for February, 1960. (2) The jury found that between January 9, 1960 and April 1, 1960, when production actually began, that lessees with full knowledge of lessors made valuable improvements on the well, and that they did so because they were induced to believe that lessors, in accepting the shut-in gas royalty after January 9, 1960, had waived the lease provisions which forbade such payments after that date. (3) On April 26, 1960, after actual production began, lessors made an oil lease to Holcombe covering the 188.74 acre tract and the lease contained the provision stated above, which recognized the continued validity of the gas lease to Pichinson and others. In our opinion, the judgment upholding the lease is correct and must be affirmed upon principles of ratification or revivor with respect to the 188 acre Hastings tract. We shall state the controlling legal principles.

■■ January 9, 1960, was the date beyond which there would be no shut-in royalty, according to the clear terms of the lease. If the lease continued thereafter, it must be by reason of actual production and there was none from that date to April 1, 1960. The lease therefore terminated. Freeman v. Magnolia Petroleum Co., 141 Tex. 274, 171 S.W.2d 339. The lessees seek to excuse themselves for the late payment of shut-in royalty, since they tendered the payment in March and the lessors accepted it. It is true that the lessors accepted the money tendered, but it was not shut-in royalty, for the contract declared against that. For us to write about shut-in royalty after January 9, 1960, we need to improvise a clause not found in the lease at all. It is one thing to excuse compliance, it is another to make a different contract for the parties. It is for this reason that we are not concerned with infrequent and special situations which excuse the force of limitation events. Hamilton v. Baker, 147 Tex. 240, 214 S.W.2d 460; Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355; Myers v. Crenshaw, Tex.Civ. App., 116 S.W.2d 1125, 134 Tex. 500, 137 S.W.2d 7; Mitchell v. Simms, Com.App., 63 S.W.2d 371; Buchanan v. Sinclair, 5 Cir., 218 F.2d 436; 26 Tex.L.Rev. 826. These cases have been criticized for confusing conditions subsequent with limitations. 21 Tex.L.Rev. 326, 329. The cases which do not excuse a tardy payment of shut-in royalty after the primary term are not applicable either. Gulf Oil Corporation v. Reid, 161 Tex. 51, 337 S.W.2d 267, 39 Tex.L.Rev. 519. In other words, the leases terminated on January 9, 1960, and shut-in royalty was not authorized after that date.

■ In spite of these principles, however, the facts bring this case within the rules of ratification or revivor which support a part of the judgment. The principle has been applied to revive deeds which were wholly inoperative as to non-joining homestead owners. The subsequent execution of a formal document even to a third person which expressly recognized in clear language the validity of the lifeless deed or lease has been held to give it life. Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626; Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619, 623. Defective description, even to the extent of its total omission, has been corrected and supplied by recitals in a subsequent lease which acknowledged the validity of a former deed. The Court, in Reserve Petroleum Co. v. Hodge, 147 Tex. 115, 213 S.W.2d 456, 79 A.L.R.2d 288, swept aside all other contentions and held that the thing and the only thing necessary to the decision of the case was the fact that there was a subsequent lease, as in Green and Grissom, supra, which clearly recognized the validity of the earlier defective deed. "For purposes of this opinion, this instrument will be treated as utterly void * * *." After making that positive statement, the Supreme Court, in Humble Oil & Refining Co. v. Clark, 126 Tex. 262, 87 S.W.2d 471, nevertheless held that a minor who, after becom-

ing of age, executed a mineral deed to a third party and recited that the land described was then under an oil and gas lease and identified it, thereby restored the lease. The Court stated that even the fact that the lease in question had terminated for failure to pay delay rentals did not alter the conclusion about restoring the lease.

In Rainwater v. Mason, Tex.Civ.App., 283 S.W.2d 435, an oil and gas lease expressly prohibited certain pooling arrangements which nevertheless were made. Production was obtained on lands which should not have been pooled with lessor's land. Lessor's predecessor, however, had assigned the royalties under the pooled lease to his creditor and this constituted a ratification. Hence a prohibited pooling arrangement was ratified by a recognition contained in a document to a third party. Rainwater v. Mason, supra.

Our case is governed by the principles announced in these cases and in Loeffler v. King, 149 Tex. 626, 236 S.W.2d 772. In Loeffler a lessee claimed a waiver of a limitation event by acceptance of a small royalty check after the lease had lapsed, as well as the fact that he had made valuable improvements on the lease. The Court rejected the pleas of waiver and estoppel, and discounted the facts about the late acceptance of royalty payment and improvements. Those same contentions are made by the lessees in this case. The court recognized the difference between forfeitures and limitations and held, as we have, that the lease terminated, citing Watson v. Rochmill, 137 Tex. 565, 155 S.W.2d 783, and Freeman v. Magnolia Petroleum Co., 141 Tex. 274, 171 S.W.2d 339. In spite of the termination, the Court held the lease was revived. The thing which revived it was the fact that Loeffler later accepted a deed to a fractional royalty in which there was a recital which said: "It is distinctly understood and herein stipulated that said land is under an Oil and Gas lease providing for a royalty of ⅛ of the oil and certain royalties or rentals for gas and other minerals * * *."

From these cases, the rule of ratification or revivor is well established. Accord, Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066; Tracy v. Lion Oil Company, Tex.Civ.App., 312 S.W.2d 562; Leopard v. Stanolind Oil & Gas Co., Tex. Civ.App., 220 S.W.2d 259; Van Deventer v. Gulf Production Co., Tex.Civ.App., 41 S.W.2d 1029; 3A Summers Oil and Gas, § 606.1; Ninth Annual Institute on Oil and Gas Law, 165; Note, 7 A.L.R.2d 294. At a time when there was actual production, Hastings and wife, by a clear and unmistaken statement in a written formal document, acknowledged that Tower Production Company was the holder of "the lease rights on gas only at this time." Hastings and wife, the complaining lessors, made the recognition statement in a lease to Holcombe, to whom they gave the oil lease on April 26, 1960, and who claimed the gas rights at the trial. This case is stronger than some of those cited, since all claimants against Pichinson and others, the original lessees, participated in the ratifying recognition statement with respect to the Hastings tract.

██ We shall now apply these principles to the two leases. Hastings and his wife and Holcombe participated in the recognition statement in writing. They made it in the oil lease on April 26, 1960, covering the 188.74 acre Hastings tract. That was the tract on which the gas well was located. The recognition was with respect to the 188.74 acre Hastings tract only. With respect to that tract, the judgment for plaintiffs, Pichinson and others, is affirmed. There was no recognition of the validity of the Hastings-Cary lease which would revive it. It terminated on January 9, 1960, for non-production and non-payment of shut-in royalty in place of production, and it was never revived.

The judgment of the trial court is accordingly affirmed as to the Hastings lease. It is reversed and rendered that the Hastings-Cary lease reverted on January 9, 1960. Since the appellants partially prosecuted

**6**

their appeal with success, the costs are divided equally.

On Motion for Rehearing.

 Defendants' motion for rehearing is grounded upon the point that plaintiffs did not invoke the theory of ratification or revivor. In our opinion plaintiffs, by pleading, proof and brief, have done enough to invoke it. By pleading, they said that the subsequent conduct of the parties gave meaning to an ambiguity in paragraph 2 of the leases, quoted in our opinion, with respect to the sale of gas. The pleading also asserted the specific words of the April 26, 1960 lease, wherein the defendants recognized the validity of the 1958 lease. They alleged that the 1960 lease was a recognition, that defendants made demands for shut-in royalty, and that plaintiffs paid the royalty, "thus clearly evidencing that they recognized said lease as being in full force and effect."

At the trial the recognition oil lease from Hastings and wife to Holcombe and Mabry was introduced, while Hastings himself was on the stand. Plaintiffs asked him, "now, on the date of this oil lease here, Mr. Hastings, you were still taking the position that Tower Production Company or the assignees still owned the leasehold rights insofar as the gas on that property, is that correct?" To this he answered, "I sure did, I didn't think it belonged to anybody else at that time, he hadn't give it up or nothing." The 1960 recognition lease was admitted without objection.

Plaintiffs' brief points to the statement of facts and the exhibit of the 1960 lease and makes the argument, "in fact the evidence clearly established that such individuals considered such leases insofar as the gas rights thereunder were concerned were in full force and effect as late as April 28, 1960, when they entered into an Oil Lease to and with C. G. Holcombe on the same property wherein it was recited

that the gas rights thereunder were owned by Tower Production Company."

Most of the trial related to other issues, but when plaintiffs had proved enough, that was and is all that is required of them. The motion for rehearing is overruled.